Harry J. PLASSIL

v.

Stephen O'HEARNE, Deputy Commissioner, United States Department of Labor, Bureau of Employees' Compensation, Fourth Compensation District, and Bethlehem Steel Corporation, Employer-Self Insurer.

No. 3647.

United States District Court
D. Maryland.

Sept. 27, 1954.

**216**

J. Healy Sullivan, Baltimore, Md., for plaintiff.

Jesse Slingluff, Jr., Piper & Marbury, Baltimore, Md., for Bethlehem Steel Corp.

George Cochran Doub, U. S. Atty., James H. Langrall, Asst. U. S. Atty., Baltimore, Md., for O'Hearne.

CHESNUT, District Judge.

The complainant in this case seeks by review to set aside the order of the Deputy Commissioner dismissing a claim for compensation under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The respondents have filed motions to dismiss the complaint. The case has been heard and considered on the pleadings and the record made before the Deputy Commissioner. The oral argument and briefs of counsel have been considered. On the record before the Deputy Commissioner it is my conclusion that the respondents' motion to dismiss must be granted, for the reasons stated in the findings of fact and conclusions of the Deputy Commissioner. Somewhat abbreviated and condensed the essential facts, of themselves not seriously in dispute, are—

1. The complainant, now 44 years of age, was for some years prior to 1943, employed by the Bethlehem Steel Corporation as an outside machinist, sometimes engaged in installing guns on ships. On December 24, 1943, he suffered a severe frostbite affecting some of the toes of his *left* foot. For the disability thus incurred he filed a claim for compensation on June 2, 1944 on which he was awarded compensation in a substantial amount, the last payment being January 16, 1946.

2. In September 1947 he experienced difficulty in his *right* foot for which he consulted Dr. Stafford, who is connected with the Johns Hopkins Hospital. His trouble was diagnosed as incipient gangrene of the right great toe, for which, in November 1947, the toe was amputated. In December 1948 he developed an ulcer on the left leg which was diagnosed as varicose veins not related in any way to his occupation. This was treated by a ligation of the veins. In November 1949 he developed phlebitis in the left leg which yielded to treatment without surgery. In February 1951 he had another attack of phlebitis in the right leg which also healed without surgery. Dr. Stafford stated that the phlebitis was in some way associated with Buerger's disease which is an impairment of the blood circulation frequently in the arteries and veins of the legs. In February 1952 the claimant again consulted Dr. Stafford complaining of cramps in the calf of the right leg which the Doctor thought was possibly incipient gangrene principally affecting the second and third toes of the *right* foot. On March 28, 1952 these two toes were amputated. In September 1952 the right foot was amputated. Shortly later the right leg below the knee was further amputated. In November 1952 a further amputation was made above the knee. After this last amputation a pathological examination indicated that the claimant had Buerger's disease.

3. No claims for compensation were made or filed with the Deputy Commissioner by the claimant for disability caused by several amputations in 1947, 1949 and those in 1952, except the last one. On June 18, 1953 the claimant filed with the Deputy Commissioner a claim for compensation stating that the date of the accident was December 24, 1943 "while installing guns on ship the left foot severely frostbitten requiring amputation of several toes and amputation of right leg in 1952" and that the nature of his injury or occupational disease was "frostbite resulting in amputation of right leg approx. 3 inches above

knee", and that he had stopped work in July 1952 but had returned to work thereafter. On January 14, 1954, a few days before the first hearing on this claim, claimant filed an amended claim for compensation in which he for the first time stated that the date of the accident or first illness was July 1952 and was caused by "exposure to prevailing weather conditions (e. g. cold and moisture) while working as outside machinist aggravated Buerger's disease adversely affecting circulation of right foot and leg"; and that he had stopped work on account of this injury in July 1952 but returned to work in May 1953. It will be noted that the amended claim differs importantly from the original claim with respect to the alleged date of injury and primary cause thereof. In the original claim the date of injury was stated to be December 24, 1943 due to frostbite of the left foot; while in the amended claim the date of the accident was stated to be July 1952 by exposure to prevailing weather conditions (e. g. cold and moisture) while working as outside machinist. In this connection it must be noted that 33 U.S.C.A. § 922 provides with regard to modification of an award by the Deputy Commissioner that a claim for compensation by reason of a prior injury must be made within a year after the date of the last compensation payment under the original award. It would appear that the original claim filed June 18, 1953 was in the nature of a claim for increase in the award made by the Deputy Commissioner in 1944; and it is apparent that this was not timely under section 922. One of the reasons assigned by the Deputy Commissioner for dismissing the claim was that if treated as a petition for modification of the original award it was not timely under this section. Counsel for the claimant does not dispute this but contends that the amended claim is on a different theory of liability for compensation and states that he was led to amend the claim by reason of a new understanding of the nature of the case received by him from a doctor's report

subsequent to June 18, 1953 when he filed the original claim.

4. At the first hearing on the claim the employer made an objection that it was not timely because no notice within time had been given to the employer or to the Deputy Commissioner by the claimant as required by section 912 of title 33, which prescribes that such notice must be given within 30 days of the injury; and also that the claim was not timely in that it was filed more than one year after the injury or cause of disability in this case.

After hearing all the evidence offered the Deputy Commissioner concluded—

1. That if the claim could be considered as an application for review of the compensation order filed August 29, 1944 it must be rejected on the ground that the application was not filed within one year after the date of the last payment of compensation;

2. That if the claim for compensation was on account of disability due to exposure prior to July 1952, no notice of injury was given to the employer as required by section 12 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 912, and

3. Claim for compensation on account of disability due to exposure arising out of and in the course of employment prior to July 1952 was not timely filed as the disability began sometime in September 1947.

The Deputy Commissioner also made findings of fact which are substantially the same as above stated.

 As to the scope of review in this class of cases the statute, 33 U.S.C.A. § 921, provides that the order of the Deputy Commissioner may be set aside if "not in accordance with law". This provision has been construed and applied in many judicial decisions in federal courts, including a number in this court. It is now settled that the scope of review is subject to the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. O'Leary v. Brown-

Pacific-Maxon, Inc., 340 U.S. 504, 71 S. Ct. 470, 95 L.Ed. 483. See also Universal Camera Co. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct 456, 95 L.Ed. 456. If the findings of the Commissioner are supported by substantial evidence and the conclusions therefrom are consistent with the applicable law, the award is not to be set aside by the court; but in determining whether there is substantial evidence to support the Commissioner's findings it is necessary that the whole record before the Commissioner and before the court be considered.

■ The Federal Longshoremen's Act is a Compensation Act similar in many respects to prior Compensation Acts in the several States. The passage of such compensation acts made a great change in the liability of employers to their employees for accidental injury sustained in the course of employment. It was no longer necessary to prove negligence on the part of the employer; but compensation acts generally do impose certain conditions with respect to the liability of the employer which require promptness of notice and filing of claims by the employee. Thus the Federal Longshoremen's Act provides in section 912 (with exceptions not relevant here) that notice of the injury must be given by the employee within 30 days to the Deputy Commissioner and to the employer; and section 913 (also with exceptions not applicable here) provides that compensation for disability under the Act shall be barred unless a claim therefor is filed within one year after the injury. Prior to the recent decision of the Supreme Court in Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225, there was some uncertainty as to whether the limitations for the filing of the claim ran from the date of the injury or from the subsequent date of disability; but in that case it was authoritatively decided that the language of section 913 plainly said that the year ran from the date of the injury and not from the date of the subsequent disabil-

ity. The Act itself in section 902(2) provides that—

"The term 'injury' means accidental injury * * * arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, * * *."

■ The conclusion of the Deputy Commissioner that the claim filed June 18, 1953 was barred because not filed within a year is clearly correct on the facts unless the contention of counsel for the claimant as to the date of the injury can be legally supported as the proper conclusion on the facts. His position as stated in the oral argument and as a result of particular inquiry from the court, is that the date of the injury under the facts of the case was at the time that Dr. Stafford, the medical attendant, first determined that the impairment of circulation in claimant's right leg was so deficient that amputation of the leg above the knee became necessary. That was just prior to the amputation in November 1952. In contrast with that it must be noted that in the original claim filed June 18, 1953 (9 months after the right leg was amputated above the knee) the date of the injury was stated to be December 24, 1943; and it was not until a few days before the first hearing on the claim that the claim was amended with respect to the date of the injury claiming then for the first time that the date of the injury was July 1952, which was 4 months before the amputation above the knee in November 1952. And counsel for the claimant in this case orally emphasizes that the claim for compensation now pressed is expressly limited to the disability due to the amputation above the knee and does not make any claim, and was not intended to make any claim, for prior several amputations of the right foot or leg. Counsel also stated in response to inquiries from the court that the present claim for compensation was

the same in principle as if there had been no injury or disability of any kind incurred by the claimant prior to the last amputation of the right leg in November 1952; and that in considering the validity of the claim all evidence prior to November 1952 could be entirely disregarded.

I am unable to agree to this contention and on the contrary I find there is ample evidence before the Deputy Commissioner to support his finding of fact that the injury and consequent disability arose long prior to 1952 and indeed in 1947 when the right foot first was found to be affected. In this connection it appears that in 1947 the claimant made a claim for group insurance to which he was entitled under a group insurance policy issued for the benefit of employees of the Bethlehem Company. And in support of the claim there was furnished a letter from the claimant's physician, Dr. Edward S. Stafford, which stated that the claimant, Harry Plassil, was under treatment for impending gangrene of the great toe, right, which has resulted from damage to the circulation of his leg caused by what was presumably frostbite four years ago. On October 5, 1952 the claimant furnished to the Bethlehem Company a statement of claim for sickness and accident weekly benefits signed by him in which he stated that the accident happened in December 1941 (presumably an inadvertent mistake for 1943) and that the accident happened while working on a ship when "got feet frostbitten." The two statements just referred to seem not to have been included in the record but were furnished by both counsel at the request of the court.

Section 903(a) of 33 U.S.C.A., provides—

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States * * *",

and, as previously mentioned, the definition of "injury" is given in section 902(2) as follows:

"The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment * * *."

At the hearing before the Deputy Commissioner the brief of counsel for the claimant disclaimed any intention to rely upon that part of the definition of "injury" including occupational disease, and it was not clear to me from the argument in court that he had changed his position in this respect. This being so it is clear that the claim was barred unless the claimant could show that he had sustained an accidental injury within one year before filing the claim on June 18, 1953. There is no evidence that he did. In March 1952 he temporarily discontinued work after two toes on the right foot were amputated. He apparently returned to work in July of 1952 and continued until a further amputation in September of 1952. And in November 1952 there was a further amputation after which he did not return to work until May 1953. The only period within the year prior to June 18, 1953, when the claim was filed, and until after the final amputation of the right leg above the knee, which is made the basis of the claim in this case, was therefore for a short period in the late spring and summer of 1952; and there is nothing to show that he sustained any accidental injury such as frostbite, or any specific injury of any kind during the year prior to filing the claim except for the short period that he worked from May 1953 until June 1953, which was after the disability for which this particular claim is made, had occurred. It also appears that some months after the last amputation in 1952 the employee was fitted with an artificial leg and has been given inside work by the employer at his former rate of wages.

The theory of claimant's counsel is that even before the accidental injury

in 1943 the claimant was suffering from Buerger's disease, the effects of which may be increased by habitual or prolonged exposure to cold and dampness; and that the final amputation of the claimant's right leg above the knee was the result of prolonged exposure of the claimant in his outside occupation on ships during winter and summer; and that the final result must be considered attributable to an accidental injury first occurring when it was surgically determined in November 1952 that the effect of Buerger's disease aggravated by long exposure required the final amputation. The medical testimony is to the effect that Buerger's disease is an impairment of the circulation, especially in the legs, which may be aggravated by exposure to cold and dampness but that the precise nature and effect of this disease is not fully and clearly known.

The only judicial authority cited by counsel for the claimant in support of his contention is the case of Hoage v. Employers Liability Assur. Corp., 1933, 62 App.D.C. 77, 64 F.2d 715, where the employee's work was habitually in a cold storage plant where the temperature was from zero to 22 degrees below, and where on a particular day after emerging from the cold storage room after fifteen minutes' stay therein, he felt a sudden numbness in his right foot which he could not relieve by stamping his feet as he had succeeded in doing on other occasions previously.

I do not think that the case cited supports the theory advanced in the present case. The Deputy Commissioner rejected the claim here not on the assigned ground of causal relationship between the claimant's physical condition and the conditions of his work, but on the assigned ground that the claim was not timely filed. In the case cited the opinion is concerned chiefly with causal relationship and the facts were held to justify the conclusion that there was an accidental injury within a year before filing the claim, and the lack of timely notice to the employer was excused by the Deputy Commissioner under the provisions of section 912(d). It was held by

the court that that was a reasonable and not arbitrary action by the Deputy Commissioner and that the evidence in the case substantially supported the award. Another case dealing with the combined effects of Buerger's disease as aggravated by a specific accidental injury is Bernatowicz v. Nacirema Operating Co., 3 Cir., 142 F.2d. 385, but the facts of the case are not sufficiently similar to warrant particular analysis. The case dealt primarily with the question of proximate cause and not with the subject of timely notice or filing of the claim.

There have been two previous cases in this court dealing with the effect of the failure to file a claim within one year after accidental injury. In Kropp v. Parker, D.C.Md., 8 F.Supp. 290, there was a specific accidental injury to an employee which caused a *latent* injury not resulting in disability until more than a year after the accident. This court reversed the Deputy Commissioner who rejected the claim because not filed within a year. But in a later case of Liberty Mutual Ins. Co. v. Parker, D.C., 19 F. Supp. 686, 687, the specific accidental injury was an obviously *patent* one and because the claim was not filed within a year from the date of the accident the award of the Deputy Commissioner in favor of the claimant was set aside. The Deputy Commissioner had based his allowance of the claim on the earlier case in this court of Kropp v. Parker, supra, which, however, was distinguished in the opinion in the later case. See also DiGiorgio Fruit Corp. v. Norton, 3 Cir., 93 F.2d. 119, certiorari denied 302 U.S. 767, 58 S.Ct. 480, 82 L.Ed. 596; and Kobilkin v. Pillsbury, 9 Cir., 103 F.2d 667, affirmed by equally divided court, 309 U.S. 619, 60 S.Ct. 465, 84 L.Ed. 983. It may also be noted that in Mr. Justice Minton's opinion in Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225, above referred to, where the claims were disallowed because not filed within the year from the date of the specific injury, it was stated that the case did not deal with either a patent injury or an occupational disease. Even if the present case could be

considered on the basis of an occupational disease, I do not think the failure to give the required notice and to file the complaint within the required time could be overlooked on the facts stated. I have not noted any federal decision under the Longshoremen's Act determining when a claim arising from occupational disease must be filed to avoid being barred by section 913, which requires filing within a year from the date of the injury; but even if it could be assumed that the claimant was entitled to a longer period than a year, or at least a year after he knew of the disability due to the occupational disease, the facts here found by the Deputy Commissioner and supported on the evidence in the record considered as a whole, seem very clearly to show that the claimant must have known of his disability at least as early as 1947 and certainly more than a year prior to the filing of the claim on June 18, 1953.

For these reasons I conclude that the action of the Deputy Commissioner in rejecting the claim must be and it is hereby *affirmed* and the complaint filed in this case must be dismissed.