**James H. DUNN**

v.

**Raymond F. BELAIR, Deputy Commissioner, First Compensation District.**

**Civ. A. 1709.**

United States District Court
D. Rhode Island.
Aug. 22, 1955.

Leo M. Goldberg, Providence, R. I., for plaintiff.

Joseph Mainelli, U. S. Atty., Arnold Williamson, Jr., Asst. U. S. Atty., for defendant.

DAY, District Judge.

The plaintiff in this action seeks to set aside an order of the Deputy Commissioner, First Compensation District, dismissing a claim for compensation under the Federal Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. The defendant filed a motion to dismiss and the hearing on that motion was deferred until the trial on the merits. The case was heard and considered on the pleadings, the record made before the Deputy Commissioner, and the oral arguments and briefs of counsel. The essential facts are not in dispute.

On December 19, 1951, the plaintiff was in the employ of Atlantic & Gulf Stevedores, Inc. at Davisville, Rhode Island. On that date, the plaintiff, while working for said employer as a longshoreman, was involved in an accident while loading a jeep onto the steamship "Greece Victory". As a result of the accident the plaintiff sustained a fracture of the distal phalanx of the right great toe, a sprain of the right ankle, and a strain of the right sacroiliac region of the back. For disabilities thus incurred, after a hearing, the defendant Raymond F. Belair, Deputy Commissioner, First Compensation District, on June 15, 1953, awarded the plaintiff compensation as follows: For temporary total disability, twenty-nine (29) weeks at the rate of $32.07 per week from December 20, 1951 to July 9, 1952, inclusive, amounting to $930.03, and for temporary partial disability for forty-two and six-sevenths (42⁶⁄₇) weeks at the rate of

$16.20 per week from July 10, 1952 to May 5, 1953, inclusive, amounting to $694.26. The total disability payments thus awarded amounted to $1,624.29.

On November 5, 1953, the plaintiff made application for the reopening of his case on the ground of a change in his condition and hearings were held on this application. As a result of these hearings, the Deputy Commissioner found that there had been no change in the physical condition of the plaintiff since May 5, 1953 and that he had not been disabled since that date as a result of any condition due to the injury sustained on December 19, 1951. On June 7, 1954 the Deputy Commissioner filed a supplemental compensation order denying the plaintiff's application for reopening of his case and for the payment of further compensation. The plaintiff here contends that the findings of the Deputy Commissioner are contrary to the law and not supported by the evidence.

In this class of cases, section 921 of Title 33, United States Code, provides that an order of the Deputy Commissioner may be set aside if "not in accordance with law". It is well settled that the scope of review of such orders is subject to the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. See also Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Thus, if the findings of the Deputy Commissioner are supported by substantial evidence on the record considered as a whole and the conclusions therefrom are consistent with the applicable law, the order is not to be set aside.

At the hearings before the Deputy Commissioner there was testimony by the plaintiff and by his physician, Doctor Portnoy. In addition, there were admitted into evidence seven written reports of five doctors who had examined the plaintiff since May 5, 1953. The testimony of the plaintiff and Doctor Portnoy before the Deputy Commissioner, as well as the seven medical reports admitted into evidence, have been carefully examined by me. Doctor Portnoy testified that in his opinion the plaintiff's physical condition was worse than it had been in May, 1953. He further testified that his opinion was based upon "objective findings" of limitation of motion in bending the lower back, the straight leg raising test, shortening of the right lower extremity, and atrophy of the left thigh. Doctor Portnoy did not testify as to any linear measurements of plaintiff's legs. However, it is significant that Doctor Hammond, an orthopedic specialist to whom the plaintiff had been referred by Doctor Portnoy, found that on February 12, 1954, the plaintiff's right leg was one-half inch shorter than his left, but that on May 5, 1954, the plaintiff's right leg was one-half inch *longer* than his left. In the face of such conflicting evidence and the relatively minor abnormality involved, the Deputy Commissioner was warranted in discounting this finding as a basis of disability.

Concerning the limitation of motion in bending the lower back and the straight leg raising test, Doctor Harris, also an orthopedic specialist, who examined the plaintiff on March 11, 1954, reported that "no tenderness could be made out over the lumbar spine, sacroiliac, or lumbosacral regions. With much hesitancy and considerable urging on my part the patient bent forward 90°. He also bent fully to the right and fully to the left and fully backward. With all this normal amount of lumbar spine bending the patient complained of low back pain, not radiating down either leg. His discomfort was entirely subjective. No muscle spasm was noticed. Straight leg raising on the right side to 45° and with marked hesitancy and considerable guarding of the right hip he was able to passively raise this leg to 90°. No muscle spasm noticed. * * * Left Hip—When this hip was raised to about 50° the patient squirmed and seemed to resist any further attempt to raise the leg, but slowly, and with considerable urging it was possible for me to raise the leg to

90°. Other left hip motions were carried out easily. These included abduction, adduction, internal and external rotation, and hyperextension. No muscle spasm noted with these motions. His discomfort was entirely subjective." The report of Doctor Crane generally supported the findings of Doctor Harris in the straight leg raising test.

In their medical reports, submitted to the Deputy Commissioner, Doctor Hammond found the plaintiff to be totally disabled and Doctor Curran concluded that the plaintiff was partially disabled. It is apparent from a reading of their reports that both of them based their conclusions in large measure on the history of his case as given to them by the plaintiff, and on his personal claims as to pain or disability. The Deputy Commissioner was not obliged to believe those representations even though they were apparently accepted at face value by these doctors.

■ The plaintiff testified at some length before the Deputy Commissioner who had the opportunity to observe him. Such opportunity is frequently of inestimable value in determining the veracity of a witness and the weight to be given to his testimony. It is clear that the Deputy Commissioner did not accept as true the testimony of the plaintiff as to his alleged pain or disability. His finding in this regard in the absence of a showing that it is clearly wrong should not be disturbed by me. Hudnell v. O'Hearne, D.C.Md.,1951, 99 F.Supp. 954. Such showing has not been made here.

In his report of his physical examination of the plaintiff on April 28, 1954, Doctor Crane makes no findings which would support the plaintiff's claim. On the contrary, in his summary he states: "It is extremely difficult to reconcile the fact that the man had a simple fracture of his right great toe, and a contusion of his back to give him the sequence of events that occurred in the past two and a third years, with a direct relationship to his injury."

The report of Doctor Harris of his examination of the plaintiff, dated March 11, 1954, states unequivocally that the plaintiff displayed no objective physical symptoms of disability. In his conclusion therein Doctor Harris states—"there was no muscle spasm noticed and his complaints and symptoms were entirely subjective. I believe this patient is able to do the work of a stevedore."

■ After a careful consideration of all the evidence I am of the opinion that there is definitely substantial evidence on the record considered as a whole to support the ultimate finding of the Deputy Commissioner and that his order was in accordance with the applicable law. Therefore, the defendant's motion to dismiss the complaint is granted.