274 F.2d 794
 ATLANTIC & GULF STEVEDORES, INC., Appellant,
v.
P. J. DONOVAN, Deputy Commissioner for the 7th Compensation
Dist. of the Bureau of Employee's Compensation,
U.S. Dept. of Labor; and Charles Cook, Appellee.
 No. 18039.
 United States Court of Appeals Fifth Circuit.
 Jan. 18, 1960.
 
 Marion Mayer, Guy W. Smith, Deutsch, Kerrigan & Stiles, New Orleans, La., for appellant.
 Lloyd Cyril Melancon, Asst. U.S. Atty., New Orleans, La., for appellees.
 M. Hepburn Many, U.S. Atty., New Orleans, La., Harold C. Nystrom, Acting Sol. of Labor, Herbert P. Miller, Asst. Sol. of Labor, Alfred H. Myers, Atty., U.S. Dept. of Labor, Washington, D.C., of counsel, for appellee Donovan.
 Before JONES, BROWN and WISDOM, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 The question here is whether there is a legal means of requiring the Deputy Commissioner to proceed to decision in a matter property before him under the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C.A. 901 et seq.
 
 
 2
 It is of vast importance as parties related amphibious worker attempt maphilbious worker attempt to answer the riddle while Jensen[1] conjured up.
 
 
 3
 Self-help is unavailing for with the traditional prohibition in Workmen's Compensation Acts, both state and this federal one, against contractual waivers or releases there is no end to a potential claim until the last going has rung in the last and highest tribunal which will listen. Guidence by experienced maritime counsel is uncertain. For his tools must be the jurisprudence which, to say the least, is more, not less, complex than it was in the pre-Davis[2] day, and all the more so since Hahn[3] as the changes of this Court in Noah[4] shortly on the heels of Flowers,[5] revealed. And while this Court has now firmly ruled that maritime injuries to one engaged in the classic occupation of a longshoreman loading or unloading a vessel,[6] and one engaged in repair of an existing vessel[7] are within the exclusive jurisdiction of the federal Act, not that of a state, the access of litigants to state tribunals makes ours an academic deliverance[8] until either the state courts concerned accept it as authoritative or their contrary decisions are upset by the possibility[9] of certiorari from the United States Supreme Court.
 
 
 4
 So it is here. After voluntary payment of substantial compensation under the Longshoremen's Act, the Employer now finds himself faced with a claim under the Louisiana Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., in the state court while the case file yet remains open-- at least not closed-- before the Deputy Commissioner. The Employer did not seek coercive injunctive relief against either the Claimant or the state court. Rather it sought (a) a declaration under 28 2201, 2202, that the Longshoremen's Act was the Claimant's exclusive remedy and, alternatively, (b) a mandatory order directing the Deputy Commissioner to 'proceed with a hearing to determine * * * the * * * issues raised' by the Employer's application before the Deputy Commissioner.
 
 
 5
 The District Court sustained the Deputy Commissioner's motion to dismiss for 'failure to state a claim on which relief can be granted and the lack of jurisdiction for this court to hear and determine the issues presented prior to administrative action taken by the Deputy Commissioner upon a claim first filed for that purpose.' Consequently, we accept as true the facts set forth in the complaint.[10] Their summary we take, with but slight change of paraphrase, from the Employer's brief.
 
 
 6
 Charles Cook, the Claimant, injured his right leg on February 18, 1957 while employed by Employer as a longshoreman. He was landing a pallet board on No. 3 deck aboard the S/S Haria Rosa docked in the Mississippi River at the Congress Street Wharf, New Orleans.
 
 
 7
 The accident was reported to the Deputy Commissioner's office on February 22, 1957 and Employer continued to make reports to that office. Compensation payments of $18 a week were started immediately, but on May 16, 1957 Cook's attorney notified the Deputy Commissioner that Cook's claim was for $26.61 a week under the Longshoremen's Act and he submitted statements to support the claim. Acting on this information, the Deputy Commissioner found that the weekly compensation payments should be $26.60 and so informed Employer. Employer complied with the ruling and adjusted payments so that Cook received eleven weeks' compensation from May 8, 1957 through July 27, 1957, or $292.71. Payments terminated July 27, 1957 when Cook was given medical clearance and returned to work.
 
 
 8
 Almost a year later Cook, through his attorney, wrote the Deputy Commissioner to make claim for further compensation for his February 18, 1957 injury. But before any action was taken on this request, he filed a suit for Louisiana Workmen's Compensation benefits, plus 12% Penalties and attorneys' fees, in the Civil District Court for the Parish of Orleans.
 
 
 9
 The Employer thereafter formally requested the Deputy Commissioner to fix a hearing to determine: (i) if the Deputy Commissioner had jurisdiction of the claim; (ii) if Cook's claim under the Longshoremen's Act had prescribed; and (iii) if the Deputy Commissioner had jurisdiction, and the claim had not prescribed, whether Cook was entitled to further compensation benefits under the Longshoremen's Act, and the amount, if any, due under that Act. The Employer's request for a hearing was refused.
 
 
 10
 In seeking to justify this dismissal, the Deputy Commissioner devotes nearly all of his energy to combating that part of the relief requested in the complaint summarized above as (a) a declaration by the Court under 28 U.S.C.A. 2201, 2202, that the Longshoremen's Act was claimant's exclusive remedy. But this is no longer in the case. The Employer does not undertake now to have us review either the power of the District Court to grant declaratory relief or the propriety of its exercise.[11]
 
 
 11
 All that is now involved is the power of the District Court to issue a mandatory decree compelling the Deputy Commissioner to proceed with the hearing-- a hearing in which the Deputy Commissioner would arrive at his own decision, and which, under the Longshoremen's Act, 33 U.S.C.A. 921, would then, and only then, be subject to judicial review. This is a command to hear and adjudicate. Not a command to tell him how it is to be decided.
 
 
 12
 The Deputy Commissioner's position is difficult to understand. By statute, see note 22, infra, he is charged with the responsibility of deciding all matters relating to compensation payable to persons sustaining specified maritime injuries. The Act by its terms prescribes that it shall be the exclusive remedy, 33 U.S.C.A. 905, with respect to 'an injury occurring upon the navigable waters of the United States * * * if recovery for the disability * * * through workmen's compensation proceedings may not validly be provided by State law.' 33 U.S.C.A. 903(a).
 
 
 13
 Whatever may be the position of claimants who are so far free to try to get a state court to allow recovery under state compensation acts, the Deputy Commissioner is patently subject to the authoritative declarations of the Federal Courts, and certainly this one, as to a Deputy Commissioner who functions within the geographical confines of this Circuit. So bound, it must have been clear that on the facts asserted, this was an alleged injury sustained by a person while engaged in performance of his duties as a longshoreman in the handling of cargo on a vessel in the Mississippi River. As such, it was, if the evidence bore out the allegations, one exclusively under the Longshoremen's Act, as we had by that time so plainly held in Noah.[12]
 
 
 14
 The Deputy Commissioner does not really challenge this. Nor does he contend that the claim was not under the Longshoremen's Act. Rather, his position is that he is required, i.e., compelled, by the statute to hold a hearing only when a claim, as such, has been filed. Since compensation was here paid without the filing of a formal claim and none has ever yet been filed, he is not required to hold a hearing. As the Act does not require a hearing under this situation, the Court cannot compel him to do so. At most, the argument goes, a Court may compel only that which the statute orders. And that is lacking here.
 
 
 15
 It is at this point that the dispute narrows. For the Employer finds explicit direction to the Deputy Commissioner to hold hearings when requested by an interested party on all material questions arising in connection with liability for compensation payments or other benefits under the Act. This it finds in 914(h)[13] and 919(c).[14] But to them, the Deputy Commissioner insists that by their use of the word 'claim' each section has in mind the written, signed formal claim on the usual prescribed official form which was not filed in this case.
 
 
 16
 A consideration of the whole Act and the automatic 'almost self-executing'[15] nature of it is convincing that this is to read the Act and the Deputy Commissioner's responsibilities in much too technical a way. In contrast to many compensation acts which require a formal claim at the outset, what sets the whole thing in motion under the Longshoremen's Act is the accidental maritime injury. The employer must keep a record and make a report within ten days after it has knowledge of a maritime injury. Failure to do so subjects it to liability for $500 civil penalty and tolls the administrative one-year limitation period under 913(a) until the notice is filed.[16]
 
 
 17
 The momentum, though, is more than mere paper reports. Knowledge of the maritime injury by the employer and the coincidence of resulting disability to the employee sets in train important substantive obligations unless the employer takes affirmative action to controvert liability. Thus, he must, without a preliminary coercive order, 'furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine * * * for such period as the nature of the injury or the process of recovery may require.'[17] Perhaps even more important the Act provides that 'except where liability to pay compensation is controverted by the employer,' this knowledge of the maritime injury and the coincidence of resulting disability for the requisite time[18] automatically requires that 'compensation * * * shall be paid periodically, promptly, and directly to the person entitled thereto, without an award.'[19] Payment must be made within 14 days 'after the employer has knowledge of the injury * * *,'[20] and a failure to begin payment or make subsequent installment payments within a like period of 14 days subjects the employer to a penalty of 10%.[21]
 
 
 18
 While the payment of compensation and furnishing medical benefits may be, and generally is, on such a self-executing automatic basis without preliminary coercive legal orders, it does not mean that such actions are over and beyond the Act or that the Deputy Commissioner has no responsibilities during that period. Quite to the contrary, it works that way because the Act prescribes that way. And the Deputy Commissioner, charged generally with administration of such cases,[22] has many continuing responsibilities and duties in which he functions as the impartial administrator.[23]
 
 
 19
 That is of extreme importance for if the Deputy Commissioner has continuing responsibilities during the period a case is being processed on this self-executing basis, it must be recognized that he functions as an impartial administrator bound to accord to the employer no less than to the employee all the rights and protection that the Act prescribes. In other words, his duty to determine relevant matter extends to both parties, not just one. During all of this time the employer is no less an interested party than he is when a formal claim has been filed. Just as the Deputy Commissioner has during this interim the obligation to ascertain relevant fact-legal questions having importance to the employee, so must he determine the merits of those significant to the employer.
 
 
 20
 This analysis demonstrates that neither the responsibilities of the Deputy Commissioner nor the right of either one or both of the parties to call on him to determine relevant matters committed to him by the Act, can depend on a formal claim having been filed. If that were so, the Act would be one-sided, the employer would have no means of exerting his statutory right to have the Deputy Commissioner pass on his contentions, and would be left to the uncontrollable contingency of the claimant filing or not filing a claim. The only alternative would be for the employer to file, within the 14 days after notice of the injury, a formal controversion[24] in every case. Any such practice would effectually destroy the statutory goal that 'compensation * * * shall be paid periodically, promptly, and directly * * *, without an award.'[25]
 
 
 21
 Consequently, the word 'claim' as found in 919(c), note 14, supra, or 914(h), note 13, supra, is not to be read in the technical sense of a formal claim signed by the claimant. It refers generally to the case involving that particular injured employee against that employer for the specified accidental injury. Construed in this fashion to achieve a balanced judicial adjudication of adversary rights, both sections affirm that the Deputy Commissioner has the duty 'upon application of any interested party' to 'order a hearing thereon.'[26] Of course, the Act does not undertake to prescribe the form or content of the hearing. A reasoned flexibility and an adaptation to the requirements of a particular situation is recognized by the language of 914(h), note 13, supra, that the Deputy Commissioner shall '* * * hold such hearings, and take such further action as he consider will properly protect the rights of all parties.'
 
 
 22
 Again, without anticipating the kind of hearing which must be held, or the decision to be made from it, it is clear that the facts alleged in the complaint showed that the Employer was asserting a valuable right which 914(h) says the Deputy Commissioner must 'properly protect.' That 'right' is the Employer's right to have his liability determined under the Longshoremen's Act if it in law is the applicable one. For the Longshoremen's Act is not a one-way street. It imposes severe liabilities on an employer At the same time, it accords to him substantial protection. For a case within the Act, the employer is assured that under no other law, in no other forum, will he finally be compelled to pay money to the employee. The liability of the employer for compensation under the Longshoremen's Act '* * * shall be exclusive * * * of all other liabilities of such employer to the employee * * * and anyone otherwise entitled to recover damages from such employer * * * on account of such injury * * *.'[27]
 
 
 23
 That right is as valuable at the end of the case as it is either in the beginning or some place down the line. Indeed, where the employer contends that his obligations under the Longshoremen's Act have been fulfilled, he is, if that contention is borne out by the facts, entitled to an adjudication by the Deputy Commissioner in order to make effective the bar which the exclusive liability of 905 raises. There is, then, nothing inconsistent with the employer demanding a hearing whose object is to establish judicially that the Longshoremen's Act applies, but that on the merits[28] no further compensation is due. Quite to the contrary, after payment of substantial compensation and the furnishing of medical benefits unlimited in duration and cost, the most valuable right would be a determination that all obligations to the employee have been fulfilled.
 
 
 24
 Since, as we have held, the Longshoremen's Act imposes the duty on the Deputy Commissioner to hold a suitable hearing to pass upon and adjudicate the contentions now made by the Employer and properly before him for decision, little need be said of the District Court's power to compel him to proceed.
 
 
 25
 If it is not inherent in the Longshoremen's Act itself, it certainly is in the Administrative Procedure Act which, as we and others have held, controls proceedings under the Longshoremen's Act.[29] The APA provides categorically that 'every agency shall proceed with reasonable dispatch to conclude any matter presented to it * * *.'[30] Apparently in recognition that a failure or refusal to hear and decide could be as destructive as bad deciding,[31] Congress provided iq 10(e) that Courts may review the inaction of an agency and specifically 'compel agency action unlawfully withheld or unreasonably delayed.'[32] And enforcement may be by a mandatory injunction.[33]
 
 
 26
 The Deputy Commissioner, on the facts set forth in the complaint, has failed and refused to hold any hearing or determine the contentions made by the Employer. This is in derogation of his statutory duty, and if the facts are established the District Court was empowered to issue suitable orders to 'compel agency action unlawfully withheld,' 5 U.S.C.A. 1009(e)(A), note 32, supra. It was error to dismiss the complaint and the matter must be reversed and remanded for further consistent action.
 
 
 27
 Reversed and remanded.
 
 
 
 [1]
 Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086
 
 
 [2]
 Davis v. Dept. of Labor and Industries of State of Washington, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, 1942 A.M.C. 1653
 
 
 [3]
 Hahn v. Ross Island Sand & Gravel Co., 1959, 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292, 1959 A.M.C. 570, rehearing denied 359 U.S. 921, 79 S.Ct. 577, 3 L.Ed.2d 583, 1959 A.M.C. 812
 
 
 [4]
 Noah v. Liberty Mutual Ins. Co., 5 Cir., 1959, 265 F.2d 547, 1959 A.M.C. 573, overruled on rehearing en banc 5 Cir., 267 F.2d 218, 1959 A.M.C. 2047
 
 
 [5]
 Flowers v. Travelers Ins. Co., 5 Cir., 1958, 258 F.2d 220, 1958 A.M.C. 2420
 
 
 [6]
 Noah v. Liberty Mutual Ins. Co., note 4, supra
 
 
 [7]
 Flowers v. Travelers Ins. Co., note 5, supra
 
 
 [8]
 Pending before another panel of this Court is another case, No. 17959, T. Smith & Son, Inc. v. Williams, which presents the question whether, in view of the anti-state court injunction prohibition of 28 U.S.C.A. 2283, a United States District Court may enjoin prosecution of a claim under the Louisiana Workmen's Compensation Act in a Louisiana Court of the very kind of claim which we held in Noah, note 4, supra, was exclusively under the Longshoremen's Act. Obviously this opinion does not undertake to decide that question or influence it in any way
 
 
 [9]
 See, for example, the state cases which have arrived at conclusions contrary to Flowers and Noah, but on which certiorari has been denied. See, e.g., Richard v. Lake Charles Stevedores, Inc., La.App. 1957, 95 So.2d 830, certiorari denied 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529; Sullivan v. Travelers Ins. Co., La.App. 1957, 95 So.2d 834, certiorari denied 355 U.S. 952, 78 S.Ct. 535, 2 L.Ed.2d 529; see also Indemnity Ins. Co. of North America v. Marshall, Tex.Civ.App., 1957, 308 S.W.2d 174, writ ref. n.r.e. in which certiorari was not sought. Of course, the explanation, conceptually unsatisfactory as it is, is that denial of certiorari is of no significance. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Atlantic Coast Line R. Co. v. Powe, 1931, 283 U.S. 401, 51 S.Ct. 498, 75 L.Ed. 1142. But this does not eliminate the possibility that certiorari may be denied leaving amphibious workers in the same state under one act rather than the other depending on many uncontrollable contingencies
 
 
 [10]
 The Court subsequently called for production of the Deputy Commissioner's file. Just what treatment was accorded this is not revealed. That record has been lodged here as an original exhibit. Neither party urges that this record in any respect detracts from the factual statements alleged in the complaint, or that, if treated as a motion for summary judgment under F.R.Civ.P. 12(c), 28 U.S.C.A., it presents matters on which there is no genuine dispute as to a material fact compelling a judgment of dismissal for other reasons
 
 
 [11]
 Little if anything was given up by this concession. Declaratory relief cannot be used to review or anticipate action of an administrative agency as to which a review procedure, as is the case under 33 U.S.C.A. 921, is established. Leonard v. Liberty Mutual Ins. Co., 3 Cir., 1959, 267 F.2d 421; London Guarantee & Accident Co., Ltd. v. Rhoades, D.C.W.D.La.1941, 39 F.Supp. 589; Paramino Lumber Co. v. Marshall, 9 Cir., 1938, 95 F.2d 203; A. L. Burbank Co. v. Willard, D.C.1950, 93 F.Supp. 891; see Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Fouts v. United States, 5 Cir., 1933, 67 F.2d 249
 
 
 [12]
 This is not a left-handed direction on how the case is to be decided by the Deputy Commissioner, see note 11, supra, and related text. We expressly refrain from any intimation. The situation is comparable to an ordinary complaint apparently within a court's jurisdiction which the court must hear to determine whether on the facts and law it really is within its jurisdiction
 
 
 [13]
 33 U.S.C.A. 914(h)
 'The deputy commissioner (1) may upon his own initiative at any time in a case in which payments are being made without an award, and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, or that payments of compensation have been stopped or suspended, make such investigations * * * or hold such hearings, and take such further action as he considers will properly protect the rights of all the parties.'
 
 
 [14]
 33 U.S.C.A. 919(c)
 'The deputy commissioner shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon.'
 
 
 [15]
 This is spelled out in Flowers, note 5, supra, especially at notes 14 and 16 and related text
 
 
 [16]
 33 U.S.C.A. 930(a), (e) & (f)
 
 
 [17]
 33 U.S.C.A. 907(a). See Eikel v. Voris, D.C.Tex.1951, 101 F.Supp. 963, affirmed 5 Cir., 1952, 200 F.2d 724, reversed on other grounds 1953, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5
 
 
 [18]
 Compensation is not allowed for the first three days' disability unless disability persists more than 28 days in which case compensation is payable from the date of disability. 33 U.S.C.A. 906(a). Compensation benefits are payable during the continuance of disability, permanent, temporary, total or partial as prescribed in 33 U.S.C.A. 908(a)-(c)
 
 
 [19]
 33 U.S.C.A. 914(a)
 
 
 [20]
 33 U.S.C.A. 914(b)
 
 
 [21]
 33 U.S.C.A. 914(e). The 10% Penalty is to be 'paid at the same time as, but in addition to, such installment.' It is payable unless excused by the Deputy Commissioner after a showing that failure to pay timely was 'owing to conditions over which (the employer) had no control.'
 
 
 [22]
 See 33 U.S.C.A. 939(b), 940(d), 927
 
 
 [23]
 In contrast to a traditional court, the Deputy Commissioner does not sit like a judge waiting for the parties to make a move. The Act imposes upon him the duty of making such investigations as he considers necessary, 33 U.S.C.A. 919(c), 923(a). In the routine handling of cases, he was many decisions to make. e.g., the need for and appointment of an umpire physician to determine disability, 33 U.S.C.A. 907(b), the time at which temporary total disability ceases, 33 U.S.C.A. 908(b), the extent, nature or percentage of permanent, partial disability, 33 U.S.C.A. 908(c), ascertainment of difference in wage-earning capacity, 33 U.S.C.A. 908(h), determination of applicable average weekly wage for purpose of computing compensation benefits, 33 U.S.C.A. 910, and the like
 That the successful operation of the Act rests principally upon this continuous informal administration of cases by the Deputy Commissioners rather than the few isolated formal hearings after claim and controversion is reflected by the Annual Reports of the Department of Labor which the Act, 33 U.S.C.A. 943, requires the Secretary to make to Congress.
 The Annual Report, Department of Labor 1957, p. 70, describes the operation under the Longshoremen's Act: 'Under the law, the first payment of compensation must be made within 14 days after the employer has knowledge of the injury or death. Known as the direct payment method, the record of timeliness of payment has been similarly good on the part of the majority of private insurance companies and self-insurers. Formal hearings and court proceedings are the exception. Because of the large number of injury cases involved, however, the amount of administrative work necessarily involved in the district offices is impressive. During 1957, there were 33,981 personal interviews with claimants and employers or their representatives, 11,848 informal conferences relating to claims, 8,027 independent medical examinations ordered, and 342 formal hearings completed.' The 1958 Report indicates that 'although such administrative activity in 1958 remained relatively the same as in the previous year, the number of informal conferences on claims increased * * *.' Annual Report, Department of Labor 1958, p. 74.
 The 1958 Annual Report at pages 74-75 demonstrates that large numbers of employees are involved and that fulfillment of its purpose demands routine, regular, certain, informal administration:
 'It is believed that close to 350,000 longshoremen, ship repairmen, and other maritime workers are affected. * * *.'
 For 1958 there were 71,076 injury/death cases reported. During the same period 74,954 cases were closed with compensation benefits (excluding medical) totaling $8,903,192, at the year end 13,968 cases were still active. The annual average for 1947-1949 is even more imposing: 114,296 reported injuries, 116,857 cases disposed of, 11.293 remaining active.
 This is in contrast to the few cases disposed of by formal hearings: 342 in 1957 and for 1958 only 371 under Longshoremen's as well as District of Columbia, Defense Bases and Outer Continental Shelf Lands Act coverages. This is achieved by informal continuosu administration as the 1958 Report emphasizes. 'During 1958, there were 34,061 personal interviews with claimants and employers or their representatives, 13,764 informal conferences relating to claims, 6,938 independent medical examinations ordered, and 371 formal hearings completed. Although such administrative activity in 1958 remained relatively the same as in the previous year, the number of informal conferences on claims increased 16 percent.' 1958 Report at p. 74.
 
 
 [24]
 33 U.S.C.A. 914(d) provides: 'If the employer controverts the right to compensation he shall file with the deputy commissioner on or before the fourteenth day after he has knowledge of the alleged injury * * * a notice * * * stating that the right to compensation is controverted * * * and the grounds upon which the right to compensation is controverted.'
 
 
 [25]
 33 U.S.C.A. 914(a). See also note 23, supra
 
 
 [26]
 33 U.S.C.A. 919(c)
 
 
 [27]
 33 U.S.C.A. 905
 
 
 [28]
 This might, as here, include the question of the timeliness of the claim. A formal claim, as we have explained, is not essential to impose liability for compensation where no controversion is filed by the employer. 913(a) does provide, however, that 'if payment of compensation has been made without and award * * * a claim may be filed within one year after the date of the last payment.' The limitation may also be waived, 913(b), or tolled, 930(f). We may assume, without deciding, that upon the hearing the employer can present what is effectually a controversion even though filed long after the 14 days subsequent to the injury as prescribed in 914(d), note 24, supra. See Leonard v. Liberty, Mutual Ins. Co., 3 Cir., 1959, 267 F.2d 421, 425; simmons v. Marshall, 9 Cir., 1938, 94 F.2d 850. And we would point out, again without deciding, that the provision for suspending further voluntary payments made without a formal award, 914(c), making the time for filing claim for further compensation date from the time of the last of such payments, 913(a), and the requirement of 914(h), note 13, supra, that where payments have been stopped the Deputy Commissioner shall take steps to investigate and hold hearings, seem to reflect that prior automatic voluntary payments do not preclude the employer from thereafter denying liability for further benefits
 
 
 [29]
 Southern Stevedoring Co. v. Voris, 1951, 5 Cir., 190 F.2d 275; O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; United States Fidelity & Guaranty Co. v. Donovan, 1954, 94 U.S.App.D.C. 377, 221 F.2d 515; Colonna's Shipyard, Inc. v. O'Hearne, 4 Cir., 1952, 200 F.2d 220; Richardson v. Britton, 1951, 89 U.S.App.D.C. 391, 192 F.2d 423; Dunn v. Belair, D.C.R.I.1955, 134 F.Supp. 802; Plassil v. O'Hearne, D.C.Md.1954, 124 F.Supp. 215
 
 
 [30]
 5 U.S.C.A. 1005(a)
 
 
 [31]
 The valuable volume, Senate Document No. 248, 79 Cong., 2d Sess., 1946. 'Legislative History of the Administrative Procedure Act' at page 264 points out that 6(a) of the APA, 5 U.S.C.A. 1005(a), note 30, supra, was enacted to make certain that 'no agency shall, in effect, deny relief or fail to conclude a a case by mere inaction, or proceed in dilatory fashion to the injury of the persons concerned.'
 
 
 [32]
 5 U.S.C.A. 1009(e)(A)
 To meet the criticism that 10(e) of the APA, 5 U.S.C.A. 1009(e), would unduly extend the scope of review by authorizing courts to specify administrative action to be taken, Congress used language to make clear that 'the provision means that the court may compel the agency to act where it has 'unlawfully withheld' action, rather than to direct action and state what it will be in detail. The court may require agencies to act, but may not under this provision tell them how to act in matters of administrative discretion.' Sen.Doc. No. 248, note 31 supra, at 40.
 
 
 [33]
 'The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence of inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction.' 5 U.S.C.A. 1009(b)