United States Court of Appeals,

Fifth Circuit.

No. 93-7077.

INGALLS SHIPBUILDING, INC., Plaintiff/Appellee,

v.

ASBESTOS HEALTH CLAIMANTS, Intervenors-Appellants,

and

N. Sandra Kitchin, District Director for the Sixth Compensation District, Office of Workers' Compensation Programs, United States Department of Labor, Defendant/Appellant.

March 30, 1994.

Appeals from the United States District Court for the Southern District of Mississippi.

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Ingalls Shipbuilding, Inc. ("Ingalls") filed the instant action seeking to compel N. Sandra Kitchin, the District Director for the Sixth Compensation District (the "Director"), to transfer the asbestos claims of approximately 3,100 former Ingalls' shipyard workers to the Office of the Administrative Law Judge ("OALJ") for a hearing. The district court granted a writ of mandamus ordering the Director to refer the cases. The Director appeals. We AFFIRM.

*FACTS AND PROCEDURAL HISTORY*

On October 10, 1990, Ingalls filed with the OALJ a Motion to Consolidate and Motion for Summary Decision concerning certain asbestos claims by former Ingalls' shipyard workers on file with

1

the Director.[1]  Along with that filing, Ingalls formally requested that the Director transfer the enumerated claims to the OALJ for an administrative hearing.  On November 2, 1990, and February 15, 1991, Ingalls made identical filings with respect to newly identified claims bringing the total number of claims that it requested the Director to transfer to the OALJ for a hearing to approximately 3,100.[2]

---

[1]N. Sandra Kitchin is the local District Director of the Department of Labor's Office of Workers' Compensation Programs ("OWCP").  She is responsible for the general administration of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.,* in the Sixth Compensation District.

[2]Ingalls compiled this list of nearly 3,100 claims by searching the records to find all claims against it wherein the claimants had accepted one or more tort settlements with third-party defendants without obtaining Ingalls' formal, written approval.  This action by Ingalls was prompted by our opinion in *Nicklos Drilling Co. v. Cowart,* 907 F.2d 1552 (5th Cir.1990).  In *Cowart,* a panel of this Court held that, pursuant to 33 U.S.C. § 933(g)(1), failure of a claimant to obtain the approval of both the employer and the employer's insurance carrier before entering into a settlement would result, without exception, in forfeiture of benefits under the LHWCA.  *Id.* at 1553;  *See also, Petroleum Helicopters, Inc. v. Barger,* 910 F.2d 276, 278 (5th Cir.1990); *Petroleum Helicopters, Inc. v. Collier,* 784 F.2d 644, 647 (5th Cir.1986).  On rehearing *en banc* of the *Cowart* case, this Court affirmed the panel's opinion and further made it clear that this approval-or-forfeiture provision applied even if the employer was not paying benefits at the time of settlement. *Nicklos Drilling Co. v. Cowart,* 927 F.2d 828, 830 (5th Cir.1991) (*en banc* ). Finally, the United States Supreme Court granted certiorari and affirmed the *en banc* opinion of this Court.  *Estate of Cowart v. Nicklos Drilling Co.,* --- U.S. ----, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

Ingalls argues that these decisions entitle it to summary judgment defeating the listed claims and thus Ingalls seeks to force these claims to adjudication on the merits so as to dispose of them.  Whether Ingalls is correct and is therefore entitled to summary judgment is not before this Court.  That must be decided on the particular facts of each case by the ALJ to whom such cases are assigned and we express no opinion in that regard.  Instead, the issue we

In December of 1990, at Ingalls' request, the Director did refer a group of fifty-five of these claims[3] to the OALJ for a hearing and disposition on Ingalls' substantive motions. However, the Director then refused to transfer the balance of the cases. Instead, over the next several years, the Director continued in devising new and inventive rationales for deferring the referral of these claims. Hence, on October 10, 1991, Ingalls filed the instant mandamus action seeking to force the Director to transfer the claims.

The district court ruled in favor of Ingalls finding that the Director had a nondiscretionary duty under the LHWCA to order a hearing before the OALJ when requested by an interested party. Thus, on January 7, 1993, the district court issued an order compelling the Director to transfer the asbestos claims to the OALJ. The parties now appeal.

1. JURISDICTION

Initially, we must respond to the Director's contention that the district court lacked jurisdiction to issue the instant mandamus order. Subject matter jurisdiction is a question of law over which we exercise plenary review. *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1204 (5th Cir.1992).

In this case, jurisdiction in the district court is predicated on the Mandamus and Venue statute. That statute broadly

---

face today is whether the district court was correct in compelling the Director to order a hearing before the OALJ.

[3]This group of cases was identified as the "Pate cases" after the name of the plaintiffs' attorney who had filed them.

provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The current action was brought in an attempt to compel the Director, an officer of the United States, to perform a duty allegedly owed to the plaintiff pursuant to the LHWCA, a federal statute. Thus, it is clear that this action falls squarely within the ambit of this statute.

Nevertheless, the Director contends that we should remove this action from the reach of section 1361 on the strength of *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984) (hereinafter TRAC). In *TRAC,* the D.C. Circuit held that where an agency's governing statute vests jurisdiction for review of agency action in the court of appeals, that court also has the power to compel agency action in aid of that jurisdiction.[4] *TRAC* 750 F.2d at 77. Further, the *TRAC* court explained that the existence in the appellate court of the power to compel agency

---

[4]The *TRAC* court identified two sources of authority to support its conclusion that the court of appeals was empowered to compel agency actions when review over that agency's action is entrusted by statute in the court of appeals. First, the court held that the All Writs Act, 28 U.S.C. § 1651, provided that court with the authority to issue all writs necessary to protect its prospective jurisdiction. *TRAC,* 750 F.2d at 76. Second, the *TRAC* court found support in the language of the Administrative Procedure Act (APA) which states that the reviewing court shall "compel agency actions unlawfully withheld or unreasonably delayed ..." 5 U.S.C. § 706(1). From this language, the D.C. Circuit gleaned a congressional intent that the courts designated by statute to review agency actions play an important role in compelling agency action that has been improperly withheld or delayed. *Id.* at 77.

action defeated mandamus jurisdiction in the district court pursuant to 28 U.S.C. § 1361 because mandamus is not available when review by other means is possible. *Id.* at 77-78.

Even if we chose to follow our sister circuit's holding in *TRAC,* we do not believe that this would compel a holding in this case that the district court lacked jurisdiction. This is because in *TRAC,* the appellate court's jurisdiction to compel action by the FCC was based on the statutorily conferred jurisdiction to review final FCC actions. While the LHWCA does provide for review by the court of appeals, that review is limited to final orders of the Benefits Review Board (the "Board"). 33 U.S.C. § 921(c). However, the action or inaction at issue in the instant case is attributable to the Director and not the Board.

Prior to 1972, the Director had both the administrative duties and the full adjudicatory authority under the LHWCA.[5] In 1972, though, Congress amended the LHWCA and split the authority for these two functions.[6] The Director retains authority for the

---

[5]Moreover, compensation orders issued by the deputy commissioners were reviewable in the district court. *In re Compensation Under Longshore & Harbor Workers' Compensation Act,* 889 F.2d 626, 629 (5th Cir.1989).

[6]Under 33 U.S.C. § 919(d), the authority to act as hearing officer was transferred from the deputy commissioners (the Director herein) to the OALJ. Specifically, that section provides that

> "Any such hearing shall be conducted by a [sic] administrative law judge.... All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges."

5

overall administration of the statute. Substantive legal or factual disputes arising under the LHWCA, however, are to be decided by the OALJ with review to the Board.[7] *Director, Office of Workers' Compensation Programs v. O'Keefe,* 545 F.2d 337, 343 (3d Cir.1976).

Review by this Court is limited to final orders made by the Board in the exercise of its adjudicatory authority. 33 U.S.C. § 921(c). The LHWCA does not, however, extend to this Court original jurisdiction over the actions of the Director in the exercise of her administrative authority.

As we have no statutorily conferred jurisdiction over the actions of the Director, the All Writs Act would not provide this Court with jurisdiction to compel action by the Director. 28 U.S.C. § 1651(a). Hence, review is not otherwise available in the court of appeals and thus, even under the reasoning of the *TRAC* court, there is no basis to defeat the mandamus jurisdiction of the district court under 28 U.S.C. § 1361. *See TRAC* 750 F.2d at 77-78.

Therefore, we conclude that jurisdiction in the district court to issue the instant order was proper pursuant to the Mandamus and Venue statute, 28 U.S.C. § 1361.

2. MANDAMUS

---

33 U.S.C. § 919(d).

[7]The Board is authorized "to hear and determine appeals raising a substantial question of law or fact ... from decisions with respect to claims of employees...." 33 U.S.C. § 921(b)(3). It is a "quasi-judicial body presented with select cases and not an agency involved in the overall administration of the statute." *O'Keefe,* 545 F.2d at 343; *See also Ryan-Walsh Stevedoring Co., Inc. v. Trainer,* 601 F.2d 1306, 1314 n. 7 (5th Cir.1979).

6

Mandamus is only appropriate when the claim is "clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Giddings v. Chandler,* 979 F.2d 1104, 1108 (5th Cir.1992); *See also Nova Stylings, Inc. v. Ladd,* 695 F.2d 1179, 1180 (9th Cir.1983). Mandamus is thus not generally available to review the discretionary acts of public officials. *Giddings,* 979 F.2d at 1108. Though this is a difficult burden for a plaintiff to meet, we believe that the plaintiff herein has shown that it is entitled to relief.

The duty in this case stems from the text of the LHWCA. That statute provides that "[t]he [Director] shall make or cause to be made such investigation as [she] considers necessary in respect of the claim, and upon application of any interested party *shall* order a hearing thereon." 33 U.S.C. § 919(c) (emphasis added). That this section creates a clear, non-discretionary duty on the part of the Director was decided by this Court in *Atlantic & Gulf Stevedores, Inc. v. Donovan,* 274 F.2d 794, 802 (5th Cir.1960); *See also Pyro Mining Co. v. Slaton,* 879 F.2d 187, 190 (6th Cir.1989).

The facts in *Atlantic & Gulf* are very similar to the case at bar. In *Atlantic & Gulf,* the employer requested a hearing, and when the director refused, the employer sought a mandatory order in the district court to compel a hearing. After dismissal in the district court, the case came before this Court presenting the issue of whether the district court could properly order the

7

Director to proceed to a hearing.[8]   *Atlantic & Gulf,* 274 F.2d at 796.

After reviewing the LHWCA, this Court found that, under 33 U.S.C. § 919(c), the Director had a clear and mandatory duty to proceed to a hearing.  *Id.* at 802.  Further, the *Atlantic & Gulf* Court found that the Director was in derogation of that duty and that the district court was empowered to issue a suitable mandatory order to compel compliance with that duty.[9]

The Director herein does not seriously dispute the mandatory nature of this duty.  Instead, she contends that she has discretion to *delay* the performance of that duty.  The exercise of this discretion is justified, she argues, because delaying the referral of these cases would not prejudice Ingalls and because of the administrative concerns she has raised.[10]

---

[8]This case was decided prior to the 1972 Amendments to the LHWCA which split the administrative and adjudicatory functions between the Director and the OALJ respectively.  Thus, at the time that the *Atlantic & Gulf* case was decided, the Director not only handled the administrative duties under the LHWCA, but he also served as the hearing officer.  *See* 33 U.S.C. § 919(d).

[9]The *Atlantic & Gulf* Court found that this power to compel action by the Director was inherent in the LHWCA itself.  However, even if were not, the Court explained that it certainly did exist under the provisions of the APA.  Specifically, the Court found that every agency has a duty to conclude any matter before it with reasonable dispatch and that the courts are specifically empowered to review the inaction of an agency and to "compel agency action unlawfully withheld or unreasonably delayed."  *Atlantic & Gulf,* 274 F.2d at 802 (quoting 5 U.S.C. § 706(1)).

[10]Specifically, she argues that immediate referral of so large a number of cases will overburden her office and inundate the OALJ.  Accordingly, she claims she has discretion to manage the referral of these cases to the OALJ so as to conserve administrative resources and maximize the efficiency of the

We cannot agree that the Director possesses discretion to delay ordering a hearing after a request for one has been made. Under the LHWCA, the Director is expressly granted broad discretion in the early stages of a claim. As the majority of claims involve problems that result from misunderstandings or mistakes of fact or law which "seldom require resolution through formal hearings.... the [Directors] are empowered to amicably and promptly resolve such problems by informal procedures." 20 C.F.R. § 702.301. These efforts usually take the form of informal discussions, written communications or informal conferences at the Director's office. 20 C.F.R. § 702.317.

However, if it becomes apparent that the claim cannot be settled amicably, or on application of an interested party, the Director's discretion ends and she must refer the case to the OALJ for a hearing. This is clear from the governing regulations which state that

> if [the Director] is satisfied that any further conference would be unproductive, or if any party has requested a hearing, the [Director] *shall* prepare the case for transfer to the Office of the Chief Administrative Law Judge.

20 C.F.R. § 702.316 (emphasis added). Further, it is clear from the LHWCA itself which mandates that the Director "upon application

administrative process. Moreover, she argues that referral of the cases should be delayed until after disposition of the "Pate" cases which are already before the OALJ. Disposition of these cases, the Director contends, will narrow the scope of the dispute and help speed adjudication of the remaining cases without the administrative burden of transferring all the cases to the OALJ. Lastly, the Director claims to have discretion to defer transferring the claims to allow her to develop the claims better through further informal investigation.

of any interested party *shall* order a hearing thereon."  33 U.S.C. § 919(c).

To allow the Director discretion, after a request for a hearing has been made, to delay performance of this duty until such time as she, in her discretion, decides that such a hearing is either necessary or administratively convenient would effectively defeat the mandatory language of these provisions.  We do not believe that this would be consistent with either the statute or the regulations.  Therefore, whether Ingalls would be prejudiced and whatever the merits of the administrative concerns that the Director has raised, we hold that the Director lacked discretion to delay the ordering of a hearing.[11]

In sum, we note that Ingalls, an interested party herein, has specifically and repeatedly requested that the Director transfer the claims in issue to the OALJ for a hearing.  Further, in her reply brief to this Court, the Director admits that disposition of these cases through informal means is highly unlikely.  Under these circumstances, we find that the Director had a clear, ministerial and nondiscretionary duty pursuant to 33 U.S.C. § 919(c) to transfer the claims in issue to the OALJ for a hearing.  Moreover, like the *Atlantic & Gulf* Court, we believe that mandamus was the

---

[11]A reviewing court will generally give judicial deference to a reasonable statutory interpretation by an administrative agency, *Chevron United States, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984);  however, the court "should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms."  *Estate of Cowart,* --- U.S. at ----, 112 S.Ct. at 2594.

proper remedy to redress the Director's failure to carry out this duty. *Atlantic & Gulf*, 274 F.2d at 802. Accordingly, the district court did not err in granting mandatory relief to Ingalls ordering the Director to comply with her statutory duty.

3. PROTECTIVE CLAIMS

More than ninety percent of the workers who filed the claims in issue herein allege to have been exposed to asbestos in the workplace, but at present they display only minor or benign pulmonary changes without showing any current disability. Thus, they have no present claim against Ingalls for disability. Nevertheless, these workers filed claims with the Director pursuant to an old administrative practice whereby a worker would make a "protective filing" to prevent the running of the statute of limitations and thus preserve his or her right to seek compensation for any possible future disability.[12] *See Generally Pillsbury v. United Engineering Co.,* 342 U.S. 197, 199, 72 S.Ct. 223, 224, 96 L.Ed. 225 (1952).

In light of this, the Director contends that even if Ingalls would otherwise have a right to demand that the Director transfer

_____

[12]Under the old LHWCA provisions, the one year limitations period for the right to compensation for disability under the LHWCA began to run at the time of the "injury." *Marathon Oil Co. v. Lunsford,* 733 F.2d 1139, 1141 (5th Cir.1984). In some cases, however, disability might not arise from an on the job "injury" until much later. In such a case, a worker's right to receive compensation for his disability could be time-barred before it even accrued. To alleviate this problem, the Director would accept "protective filings" from workers who showed no current disability to satisfy the requirement that claimants file within one year of their injury. Then, the claim would be held in abeyance until such time as a compensable injury developed, if one ever did. *See Pillsbury,* 342 U.S. at 199, 72 S.Ct. at 224.

contested LHWCA claims to the OALJ for a hearing, we should hold that these particular claims should be held in abeyance. This is because they are not present claims for compensation and, as such, maintenance of these claims in no way prejudices Ingalls. In short, the Director would have us separate out these types of claims and exempt them from the purview of the duty imposed by 33 U.S.C. § 919(c).

We do not choose to do this. First, as the Director's counsel admitted in oral argument, there is nothing on the face of these claims to distinguish them as different from any other claim. Second, nothing in the LHWCA or the governing regulations authorizes the filing of protective claims or even recognizes their existence. Moreover, the Board has specifically ruled that, under the Act, there is no provision for protective filings. All claims filed with the Director are to be treated as active claims and, once filed, section 919(c) directs an investigation, and if requested by an interested party, a hearing. *Black v. Bethlehem Steel Corp.,* 16 B.R.B.S. 138, 142 (1984). Finally, the practice of filing protective claims is no longer necessary. This is because the 1984 amendments to the LHWCA make it clear that the limitations period does not begin to run until a worker knows (or should know) of the true nature of his condition, i.e., that it interferes with his employment by impairing his ability to work, and its causal connection with his employment. 33 U.S.C. § 913(b)(2); *See also Marathon,* 733 F.2d at 1141-42. As this administrative practice has been outdated for a decade, we do not wish to issue a ruling that

12

would perpetuate this archaic and unnecessary procedure.

For these reasons, we hold that the protective claims filed in the instant case enjoy no special status which would exempt them from the reach of 33 U.S.C. § 919(c).

4. WITHDRAWAL

The Director related to the district court that if the court were to rule that the claims must be referred to the OALJ, then many claimants would likely seek to withdraw[13] their claims rather than bear the expense of, and risk an adverse ruling from, an administrative hearing at the present time.[14]  Hence, the Director argued that should the court rule that Ingalls was entitled to a prompt hearing, the claimants should be given an opportunity to move for withdrawal and the Director should be entitled to consider and act on those motions prior to, and in lieu of, referring the claims to the OALJ.  The district court, however, did not address this argument, but rather it simply ordered the Director to

[13]Under the governing regulations, the Director is authorized to permit such withdrawal, before the adjudication of a claim, if it is "for a proper purpose and in the claimant's best interest...."  20 C.F.R. § 702.225(a)(3).  Moreover, the withdrawal is without prejudice to the filing of a later claim, subject to the time limitations of the LHWCA.  20 C.F.R. § 702.225(c).

[14]This would be an unsurprising choice, particularly for those who suffer no current disability and thus only made protective filings.  This is because their only purpose in filing was to protect against the running of the statute of limitations should disability later develop.  As they are now protected by the new limitations period, there is little benefit in maintaining their protective claims.  33 U.S.C. § 913(b)(2); *Marathon,* 733 F.2d at 1141-42.  Also, as disability may never develop, they may never have a claim to pursue.  Until such time as they do have a claim to pursue, there is scant reason to wage this administrative battle.

transfer the claims within a reasonable time, not to exceed thirty days.

On appeal to this Court, the Director continues to argue that she should be allowed to consider motions for voluntary withdrawal filed by the claimants. Ingalls, however, objects arguing that to allow the Director to consider motions to withdraw would be contrary to the mandamus order. Further, Ingalls argues that withdrawal should not be allowed because Ingalls has joined issue by its substantive motions. Lastly, Ingalls contends that the issue is not properly before the district court.

We think that this issue was properly before the district court and should have been addressed. Our review of this issue is hampered, however, because the record is not sufficiently developed on this point. Nothing in the record discloses when, or even if, proper motions to withdraw have been filed. Moreover, the effect of the district court's mandamus order on the Director's power to consider motions to withdraw is unclear. Accordingly, we think it best to remand this issue to the district court for further development and explication on this issue.

*CONCLUSION*

For the foregoing reasons, we AFFIRM the district court's issuance of a writ of mandamus compelling the Director to perform her duty under 33 U.S.C. § 919(c) and order a hearing on the controverted LHWCA claims in issue. However, we REMAND the case to allow the district court to further consider the issue of withdrawal.

14