UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-60615 c/w 00-60093
_____

POOL COMPANY and Carrier;  SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD.,

Petitioners,

VERSUS

OTIS L. COOPER; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
US DEPARTMENT OF LABOR,

Respondents.

_____

Petitions For Review of an Order
of the Benefits Review Board

_____

November 20, 2001

Before STEWART and PARKER, Circuit Judges, and GOLDBERG,[1] Judge

GOLDBERG:

Petitioners Pool Company ("Pool") and its insurance carrier Signal Mutual Indemnity

Association, Ltd. ("Signal"), appeal the decision of the Benefits Review Board ("BRB") awarding

respondent Otis L. Cooper ("Cooper") temporary total disability benefits under the Longshore

and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 U.S.C. §§ 901 et seq. (1994).

The petitioners allege that the BRB erred by affirming the determinations of the administrative

_____

[1]  Senior Judge, United States Court of International Trade, sitting by designation.

law judge ("ALJ") that Cooper's claim was timely and that he had not withdrawn it in part, and by

awarding attorney's fees. We affirm the decision of the BRB with respect to the timeliness of the

claim; affirm on other grounds the award of attorney's fees; but remand so that the ALJ may

reconsider Cooper's waiver of a part of his claim and allow Pool and Signal to comment thereon.


## I.      FACTUAL AND PROCEDURAL BACKGROUND

Cooper began his employment at Pool in 1979 as a roustabout. In 1989, he sustained an

injury to his right knee, which required surgery. During his approximately six-week

convalescence, Pool paid him temporary total disability benefits under the LHWCA.[2] Cooper's

---

[2] The LHWCA distinguishes disabilities binarily with respect to both their duration (permanent or temporary) and their degree (partial or total). See 33 U.S.C. § 908. Consequently, there are four different categories of disability: permanent total disability, temporary total disability, permanent partial disability, and temporary partial disability. Louisiana Ins. Guar. Ass'n v. Abbott, 40 F.3d 122, 125 (5th Cir. 1994). The duration of disability is a medical question, so an injured employee is considered temporarily disabled under the LHWCA until he attains maximum medical improvement ("MMI"). Id. at 126. However, because the degree of an employee's disability is primarily an economic rather than a medical concept, "the availability of suitable alternative employment [is what] distinguishes partial from total disability." Id. Thus, an employee is entitled to receive temporary total disability benefits, in the form of two thirds of his average weekly wages, so long as his medical condition is believed capable of improvement and he is unable to obtain suitable alternative employment. See 33 U.S.C. § 908(b).

"The point of maximum medical improvement represents the beginning of permanent, as opposed to temporary, disability under the statutory scheme." Louisiana Ins., 40 F.3d at 126. At that point, if suitable alternative employment is still unavailable, the employee qualifies for permanent total disability benefits; otherwise, the employee receives permanent partial disability benefits. If the employee's injury involves a part of the body among those enumerated in 33 U.S.C. § 908(c)(1)-(20), (22), "the statute creates a conclusive presumption of incapacity to earn wages and sets compensation at 66⅔% of the claimant's actual wage for a fixed number of weeks. When these types of scheduled injuries occur, a claimant simply proves the relevant physical injury and compensation follows for a finite period of time." Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 296 (1995) (citation omitted). If the employee suffers only partial loss or partial loss of use of the body part, the duration of benefits for a scheduled injury is reduced by a coefficient equal to the percentage of impairment. See 33 U.S.C. § 908(c)(19); see also Stevens v. Director, OWCP, 909 F.2d 1256, 1258 n.1 (9th Cir. 1990). If the employee has a non-

-2-

physician, Dr. William A. Morrison, a board-certified orthopedic surgeon, diagnosed a fifteen percent permanent partial disability. Cooper accordingly continued to receive permanent partial disability benefits for his scheduled injury after he resumed work as a roustabout in 1990.

On August 20, 1992, Cooper re-injured his right knee while working for Pool. He informed his supervisors of the mishap and received authorization to seek medical attention. On August 28, 1992, Dr. Morrison ordered a magnetic resonance imaging ("MRI") of Cooper's knee. Dr. Morrison also referred Cooper to Dr. Gene Barrett, another board-certified orthopedic surgeon, who informed Cooper that his anterior cruciate ligament ("ACL") required surgery. On November 24, 1992, Cooper ceased working, and Pool voluntarily began to pay Cooper temporary total disability benefits. At an unspecified date, Pool also began to pay Cooper permanent partial disability benefits, apparently before any diagnosis of maximum medical improvement.

Dr. Barrett performed surgery on Cooper's ACL on February 24, 1993. The surgery was at best a mixed success; Cooper continued to complain of pain in his right knee, and several tests confirmed poor quadriceps development in his right leg. On January 14, 1994, Dr. Barrett resigned himself to the opinion that Cooper's condition would not improve, but would remain at fifteen percent impairment. Dr. Barrett revised his opinion on February 28, 1994, when he concluded that Cooper had attained maximum medical improvement and would never work as a roustabout again, assigned him a twenty percent impairment rating, and discharged him. As of that same day, Pool ceased payment of temporary total disability benefits. On April 22, 1994,

---

scheduled injury, he receives two-thirds of the difference between his pre-injury wages and his current wages, "payable during the continuance of the disability." 33 U.S.C. § 908(c)(21).

Pool made the final payment of benefits for Cooper's scheduled permanent partial disability, and also made a supplemental payment for eighteen days of total temporary disability benefits. Around this time, on his own initiative Cooper began looking for employment, and eventually started work as a high school security guard on September 3, 1994. However, Cooper returned to Dr. Barrett on several occasions throughout 1994, complaining of knee pain.

On October 20, 1994, after Dr. Barrett suggested that Cooper obtain a second opinion, Dr. Morrison again examined Cooper's right knee, and recommended another MRI. On December 8, 1994, Dr. Barrett diagnosed Cooper with a grade three or grade four chrondromalacia, a condition whereby coating on the bone cracks and, at grade four, raw bone rubs on raw bone. Shortly thereafter, on December 20, 1994, Dr. Barrett noted Cooper's performance on a knee strength test as "pitiful."

On February 25, 1995, Cooper filed a form LS-203, Notice of Disputed Claim, with the Office of Workers' Compensation Programs ("OWCP") of the United States Department of Labor, seeking further disability benefits. Pool received written notice of Cooper's claim from the OWCP on March 15, 1995, and responded on March 22, 1995, by filing a form LS-207, Notice of Controversion, disputing Cooper's entitlement to additional benefits. On March 28, 1995, the OWCP informed Cooper of the petitioners' assertions. Cooper never responded to the OWCP, and the claim did not move forward until 1997.

Throughout 1995 and 1996, Cooper worked off and on as a security guard, while continuing to be treated by Dr. Barrett for his chronic knee pain. On January 31, 1997, Dr. Barrett performed an arthroscopic procedure on Cooper's right knee that confirmed the diagnosis of chrondromalacia and the necessity of reconstructive ACL surgery. In particular, Dr. Barrett

found that if Cooper underwent additional ACL surgery, his impairment rating would decrease to around fifteen percent and potentially he could resume his job at Pool, but that if he did not undergo the surgery, his condition would decline to thirty percent impairment. Following the arthroscopic procedure, Dr. Barrett placed Cooper on temporary total disability. Cooper, who had been working as a security guard prior to the procedure, did not return to that job until April 10, 1997.

Signal authorized ACL surgery and Dr. Barrett's ongoing treatment of Cooper. However, Cooper pursued his claim against the petitioners for additional monetary compensation. The ALJ conducted a formal evidentiary hearing on December 5, 1997. In his decision and order awarding benefits, the ALJ held that Cooper's claim was not time-barred; that Cooper's condition had not stabilized; that consequently Cooper was entitled to ACL surgery and to temporary total disability benefits until such time as he did attain maximum medical improvement; and that Cooper had been temporarily totally disabled from February 24, 1994 through September 2, 1994, and from January 31, 1997 through April 9, 1997, and was entitled to benefits for those periods. In two supplemental decisions, the ALJ found the petitioners liable for Cooper's attorney's fees pursuant to § 28(a) of the LHWCA, 33 U.S.C. § 928(a). On appeal, the BRB affirmed the ALJ's decision, but it upheld the award of attorney's fees under § 28(b) of the LHWCA rather than under § 28(a).

In conformity with 33 U.S.C. § 921(c), Pool and Signal now appeal the decision of the BRB. The Director of the OWCP ("Director") has also filed a brief arguing that the BRB erred in affirming the ALJ's award of benefits for the period of March 3, 1994 through September 2, 1994, and erred by awarding attorneys fees under § 28(b) rather than § 28(a) of the LHWCA, but urging affirmance in all other respects.

-5-

## II. DISCUSSION

## A. Standard of Review

This Court conducts a de novo review of the BRB's rulings of law, see H.B. Zachry Co. v. Quinones, 206 F.3d 474, 477 (5th Cir. 2000), owing them no deference because the BRB is not a policymaking agency. Potomac Elec. Power Co. v. Director, OWCP, 449 U.S. 268, 278 n.18 (1980); Temporary Employment Services v. Trinity Marine Group, Inc., 261 F.3d 456, 458 (5th Cir. 2001). However, we do afford deference to the Director's interpretations of the LHWCA. Boudreaux v. American Workover, Inc., 680 F.2d 1034, 1046 n.23 (5th Cir. 1982) (en banc); H.B. Zachry, 206 F.3d at 478. As the Supreme Court has recently made clear, the precise amount of deference that we owe to any given interpretation by the Director "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." United States v. Mead Corp., 533 U.S. __, 121 S. Ct. 2164, 2172 (2001) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).[3]

---

[3] In Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the Supreme Court held that both court and agency must defer to Congress's unambiguous intent, but if a statute that the agency administers is silent or ambiguous with respect to a particular issue, the court must defer to the agency's reasonable construction of the statute, even if the court's own reading would lead to a different conclusion. 467 U.S. at 842-45. Mead clarified that Chevron's expansive conception of judicial deference to an administrative agency's legal interpretation applies only when "Congress delegated authority to the agency generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority." 121 S. Ct. at 2171 (emphasis added).

Our recognition that we owe deference to the Director's interpretations of the LHWCA preceded the Supreme Court's Chevron decision, and thus was not predicated thereon. See, e.g., Alford v. American Bridge Div., United States Steel Corp., 642 F.2d 807, 809 n.2 (1981), vacated in part on other grounds on reh'g, 655 F.2d 86 (5th Cir. 1981); Boudreaux, 680 F.2d at 1046 n.23. In our LHWCA cases post-Chevron, we have consistently acknowledged a measure

With respect to disputed issues of fact, our role is more narrowly circumscribed. Like the BRB, "we may not substitute our judgment for that of the ALJ, nor reweigh or reappraise the evidence, but may only determine whether evidence exists to support the ALJ's findings." New Thoughts Finishing Co. v. Chilton, 118 F.3d 1028, 1030-31 (5th Cir. 1997); see also 33 U.S.C. § 921(b)(3). Thus, we examine "whether the BRB properly concluded that the ALJ's factual findings were supported by substantial evidence on the record as a whole." James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 429 (5th Cir. 2000). Substantial evidence is "more

_____

of deference for the Director's interpretations of the LHWCA, but where we have discussed Chevron in this context, we have tended to avoid giving full Chevron deference. See, e.g., Phillips v. Marine Concrete Structures, 877 F.2d 1231, 1234-35 (5th Cir. 1989) (court owes "deference" to an agency's reasonable interpretation); Texports Stevedores Co. v. Director, OWCP, 931 F.2d 331, 333 (5th Cir. 1991) (court affords "considerable weight" to Director's interpretation); Ingalls Shipbuilding, Inc. v. Asbestos Health Claimants, 17 F.3d 130, 134 n.11 (5th Cir. 1994) (court "generally will give judicial deference" to agency's reasonable statutory interpretation). In other cases we have found the issue moot. See, e.g., H.B. Zachry, 206 F.3d at 478-79 (declining to address Director's claim to Chevron deference because applicable statute was clear on its face); Sketoe v. Exxon Co, USA, 188 F.3d 596, 597 (5th Cir. 1999) (rejecting Director's interpretation that was unsupported by regulations, rulings, or other indications that it was "the product of agency deliberation and judgment"); Henry v. Coordinated Caribbean Transp., 204 F.3d 609, 610, 613 (5th Cir. 2000) (dispelling Director's invocation of Chevron deference because his interpretation "has no statutory or other support). However, in one case decided shortly before Mead, we did state that the Director's interpretations of the Act merit full Chevron deference. See Ceres Marine Terminal v. Hinton, 243 F.3d 222, 227 (5th Cir. 2001) ("The Director's interpretations of the Act . . . are accepted as controlling, unless they are unreasonable . . . or contrary to clearly expressed legislative intent."). And in his brief in the instant case, the Director lays claim to such deference. See Director's Brief, at 14.

Whatever the characterization of our previous posture, it is now clear that when the Director advances interpretations of the LHWCA in litigation briefs, such interpretations merit not Chevron deference, but Skidmore deference. See Mead, 121 S. Ct. at 2177 n.19 (rejecting dissent's argument that agency interpretation not promulgated in exercise of its rulemaking authority, but subsequently reaffirmed in agency's litigation briefs, warranted Chevron difference). Indeed, the Supreme Court suggested as much in Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 136 (1997) ("[T]he Director's reasonable interpretation of the [LHWCA] brings at least some added persuasive force to our conclusion, see, e.g., Skidmore v. Swift & Co. . . . ."); accord Neeley v. BRB, 139 F.3d 276, 281 (1st Cir. 1998).

-7-

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see also Director, OWCP v. Ingalls Shipbuilding, Inc., 125 F.3d 303, 305 (5th Cir. 1997) (noting that substantial evidence is "more than a scintilla but less than a preponderance").

Finally, we will reverse the ALJ's award of attorney's fees "only if it is arbitrary, capricious, an abuse of discretion, or not in accordance with law." H.B. Zachary, 206 F.3d at 481.

## B.    Cooper's Claim Is Not Time-Barred

Pool and Signal argue that Cooper's claim for additional benefits was time-barred under § 13(a) of the LHWCA, which states:

> Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore [sic] is filed within one year after the injury or death. If payment of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment.

33 U.S.C. § 913(a). Pool and Signal acknowledge that Cooper received his last disability benefit payment on April 25, 1994, and filed his LS-203 seeking additional compensation on February 25, 1995, less than one year later. Therefore, it was facially timely under § 13(a). Nevertheless, the petitioners argue that this formally conforming filing was infirm, on the grounds that Cooper failed to satisfy the one year statute of limitations because he lacked a viable claim for benefits at the time he filed the LS-203. They claim that when Cooper submitted his LS-203, he was no longer eligible for temporary total disability benefits because he was capable of working, and that they had already paid him the full, uncontested amount of the permanent partial disability benefits to which he was entitled for his scheduled injury. As Cooper had already received all the

compensation that he was due, his claim amounted to no more than an impermissible protective filing against speculative future injuries. In support of their reasoning, the petitioners cite I.T.O. Corp. of Virginia v. Pettus, 73 F.3d 523 (4th Cir. 1996), and Ingalls Shipbuilding, Inc. v. Asbestos Health Claimants, 17 F.3d 130 (5th Cir. 1994).

We find these arguments unconvincing for several reasons. First, we do not think that the claim that Cooper filed on February 25, 1995 may be fairly characterized as "protective." Unlike the claimants in Ingalls Shipbuilding, who had endured exposure to asbestos but as yet suffered neither physical nor economic disability, see 17 F.3d at 135, Cooper's claim arose from a specific injury, which he identified on the LS-203. Cooper was under the active medical care of Drs. Morrison and Barrett in the months before he filed the LS-203. During several consultations in late 1994, they advised him of the need for further tests, and for the first time diagnosed the serious condition of chrondromalacia. Thus, there exists substantial evidence from which the ALJ could infer that, at the time Cooper filed his claim, he was undergoing continuing treatment for his original injury in the hope of improving his condition, and he and his physicians reasonably believed that he had not attained maximum medical improvement after all. Indeed, the ALJ made precisely such a finding:

> A medical report from Dr. Morrison shows that Claimant was aware of the loss of his wage earning capacity on October 20, 1994. Since Claimant had to quit working as a security guard because of his right knee injury, his capacity to earn a living was diminished. Therefore, Claimant attained the requisite awareness mandated by the Act that is required to filed a claim for compensation benefits.

Decision and Order--Awarding Benefits (June 5, 1998), at 12-13 (citation omitted). We think this conclusion is reasonable and consistent with our prior decisions. See, e.g., Louisiana Ins. Guar. Ass'n v. Abbott, 40 F.3d 122, 126 (5th Cir. 1994) ("One cannot say that a patient has reached the

-9-

point at which no further medical improvement is possible until such treatment has been completed--even if, in retrospect, it turns out not to have been effective.").  Even if we were entitled to reweigh the evidence on this issue, we would not do so, as Pool and Signal have offered no countervailing medical evidence whatsoever.[4]

Second, and relatedly, the ALJ awarded temporary total disability benefits from February 24, 1994 to September 2, 1994.  While the petitioners attack this award on procedural grounds, see infra, they never refute the basic assumption underlying this award--that Cooper had not attained maximum medical improvement at the time he filed his claim.  Because the period of this award predates Cooper's filing of the LS-203, ipso facto, the claim cannot be deemed protective.  Our decision does not turn on this point, however; even had the ALJ awarded benefits only for a period following February 25, 1995 (as he would have done if, for example, Cooper had been able to work throughout all of 1994), we would be reluctant to characterize Cooper's claim as protective, as it arose from a concrete injury that predated the filing of his claim.  While the petitioners assume that a claim is viable only if it seeks compensation for a prior unpaid period of disability, the Supreme Court implicitly held otherwise in Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121 (1997).

In Metropolitan Stevedore, the Court considered whether a worker who has suffered a real work-related injury but who is not presently "disabled" within the meaning of the LHWCA

---

[4] We are at a loss to comprehend how the petitioners can assert that "the date Claimant attained MMI was not even a realm of dispute at the ALJ hearing" and then suggest that the ALJ became "an advocate from the bench" because he held that Cooper had not attained maximum medical improvement.  See Petitioners' Reply, at 6.  The majority of the testimony and exhibits adduced at the hearing concerned the continuing state of Cooper's health.  Moreover, a claim of temporary disability necessarily subsumes a claim that the employee has not attained maximum medical improvement.

may nevertheless obtain a compensation award, in anticipation of potential future loss, in order to toll the statute of limitations. The Court answered affirmatively, holding that "a worker is entitled to nominal compensation when his work-related injury has not diminished his present wage-earning capacity under current circumstances, but there is a significant potential that the injury will cause diminished capacity under future conditions." Id. at 138. Of the two reasons that the Court gave for its ruling,[5] the first concerned the impact of § 13(a) of the LHWCA:

> Because an injured worker who has a basis to anticipate wage loss in the future resulting from a combination of his injury and job-market opportunities must nonetheless claim promptly [to defeat the one year statute of limitations], it is likely that Congress intended 'disability' to include the injury-related potential for future wage loss. And because a losing claimant loses for all time after one year from the denial or termination of benefits, it is equally likely that Congress intended such a claimant to obtain some award of benefits in anticipation of the future potential loss.

Id. at 129 (footnote omitted). The Court also noted that a present award of nominal compensation was preferable to the dubious practice of permitting protective filings, because "the [latter] approach, unlike the [former], has the defect of putting off the adjudication of every

---

[5] Because Metropolitan Stevedore involved a non-scheduled injury permanent partial disability claimant, the second consideration on which the Court based its decision was a statutory provision applicable only to that category of disability and to temporary partial disabilities. See 521 U.S. at 130-34. Compensation for these categories of injuries is based on the difference between the employee's pre-injury wages and his post-injury wages. See 33 U.S.C. §§ 908(c)(21), (e). While compensation under these classes of disability is only available to those claimants that presently hold inferior employment, compensation for a temporary total disability is available only to those claimants with no present employment. As the Supreme Court recognized in Metropolitan Stevedore, an injured worker's present employment situation can change for the worse. Thus, disability is not merely "a product of the worker's injury and present market conditions, but . . . a potential product of injury and market opportunities in the future," see id. at 132, for, we believe, all categories of disability for which the claimant's recovery is tied to his employment situation.

element of the worker's claim, including such matters as the work-related nature of the injury, until long after the evidence grows stale." Id. at 129 n.2.

The reasoning expressed in Metropolitan Stevedore--requiring claims for compensation for a future disability to be presently adjudicated, rather than deferring them until later--is similar to the approach we took in Ingalls Shipbuilding, a case on which the petitioners rely. In Ingalls Shipbuilding, we affirmed the district court's grant of a writ of mandamus ordering the Director to transfer to the Office of the Administrative Law Judge ("OALJ") for hearing certain claims by workers exposed to asbestos, ninety percent of whom were not presently experiencing any physical or economic disability. 17 F.3d at 135. The Director urged that such claims be held in abeyance, but we declined to so order, noting that changes in the LHWCA had obviated the necessity of filing protective claims. Id.. Pool and Signal's selective and misleading focus on one sentence in Ingalls Shipbuilding, wherein we stated that "nothing in the LHWCA . . . authorizes the filing of protective claims or even recognizes their existence," id., ignores the actual holding of the case--viz., "we hold that the protective claims filed in the instant case enjoy no special status which would exempt them" from being transferred to the OALJ for investigation and hearing. Id. In short, "[a]ll claims filed with the Director are to be treated as active claims," regardless of their characterization as protective or otherwise. Id. This is precisely what happened with Cooper's claim.

The petitioners' reliance on Pettus is likewise unavailing. In that case, the Fourth Circuit held that two letters briefly reciting a "demand for any and all benefits that may be due" were too vague to constitute the filing of a claim to amend a compensation order under the LHWCA. 73 F.3d at 527-28. The court observed that the OWCP did not inform the employer of any claim and

-12-

did not otherwise take any action in response to the letters, because the letters were so sparse that they "failed to indicate any actual intention on the part of the claimant to seek compensation for a particular loss, a factor that is critical in assessing their sufficiency." Id. at 527. Thus, Pettus is easily distinguished on its facts from the instant case, where Cooper filed a formal claim,[6] the OWCP processed it as such, and Pool responded with a Notice of Controversion.[7] While the Pettus court did remark that the claimant's additional period of disability followed the first claim letter, and that "[s]uch anticipatory filings cannot be thought of as initiating review," id., we do not read that observation as forming a cornerstone of the court's analysis. To the extent that Pettus does stand for the proposition that a claim may only seek compensation for an antecedent period of disability, it is in direct conflict with the Supreme Court's holding in Metropolitan Stevedore, and we must disregard it.

Finally, the petitioners' argument that they had paid Cooper all the benefits to which he was entitled is not germane to the issue of whether his claim satisfied the statute of limitations established by § 13(a). As the Director notes, such an argument goes to the merits of Cooper's claim, not to its timeliness. If, in fact, the petitioners owed Cooper no further disability benefits

---

[6] We note in passing that even an informal claim suffices to toll the statute of limitations so long as it "discloses an intention to assert a right to compensation." Fireman's Fund Ins. Co. v. Bergeron, 493 F.2d 545, 547 (5th Cir. 1974) (quoting Atlantic & Gulf Stevedores v. Donovan, 279 F.2d 76, 78 (5th Cir. 1960).

[7] Pool and Signal distort the meaning and significance of the letter of March 28, 1995, that the OWCP sent to Cooper after he filed his LS-203. Contrary to the petitioners' assertions, this letter did not state that the LS-203 "did not seek any relief for additional workers' compensation benefits," see Petitioners' Brief, at 9, or that "the OWCP was not able to discern the nature of his claim(s) at that time." Id. at 14. As the Director points out, and as the plain text of the letter makes clear, it merely informed Cooper that Pool disputed his claim for benefits and that he needed to supply additional information to substantiate his claim. See J. Ex. 10.

because he had no compensable disability for the relevant period and could not demonstrate a significant potential of future compensable disability under <u>Metropolitan Stevedore</u>, then the proper action for the ALJ would be to deny compensation on the merits, not dismiss for failure to satisfy the statute of limitations. Although Cooper's claim is perhaps unusual in that it did not move forward for resolution for several years, we are aware of no authority that suggests it should be disqualified from consideration on that basis alone. <u>Cf.</u> <u>Intercounty Constr. Corp. v. Walter</u>, 422 U.S. 1, 3-12 (1975) (holding that a timely filed claim for permanent disability benefits that remained dormant for ten years, during part of which time the employer had paid temporary disability benefits, was not time-barred despite one year statute of limitation in § 22 of LHWCA for amendment of compensation orders).

Accordingly, we hold that Cooper's claim for disability benefits was not time-barred under § 13(a) of the LHWCA.

**C.      The ALJ Must Take Notice of Cooper's Attempt to Withdraw a Portion of His Claim, and Allow the Petitioners to Comment Thereon**

The petitioners assert that even if Cooper's claim is not time-barred, the ALJ erred by awarding temporary total disability benefits for the period March 3, 1994 through September 2, 1994. They argue that Cooper withdrew his claim to such benefits during the formal hearing before the ALJ. At that hearing, Cooper's counsel became aware for the first time of a letter sent by Thomas Brooks, a representative of Pool's previous insurance carrier, to Cooper's previous counsel, Karl Wiedemann. The letter, dated March 10, 1994, purported to memorialize a telephone conversation between Mr. Brooks and Mr. Wiedemann on March 3, 1994, in which they agreed that Cooper had attained maximum medical improvement (albeit with a <u>fifteen</u>

-14-

percent permanent partial disability) and that Cooper was employable at other jobs and did not require the assistance of an employment rehabilitation counselor. Upon learning of this letter, Cooper's current counsel stated on the record that Cooper would withdraw his claim for temporary total disability benefits from February 28, 1994, to March 3, 1994. Contrary to the record evidence, the petitioners characterize this withdrawal as covering March 3, 1994 to September 2, 1994. See Petitioners' Brief, at 17; Petitioners' Reply Brief, at 7-8.

Cooper urges us to affirm the decision of the BRB, which held that the concession of Cooper's counsel at the formal hearing was without effect because he did not follow the procedure for withdrawing a claim for benefits set forth in 20 C.F.R. § 702.225(a) (1999). That provision permits an employee to withdraw his claim without prejudice provided that he files a written request to do so with the district director, and the director determines that withdrawal is for a proper purpose and is in the claimant's best interest. See 20 C.F.R. § 702.225(a).

The Director questions whether the petitioners accurately describe the dates for which Cooper waived a part of his claim. Assuming that they are correct, the Director then argues that the BRB erred, as such a concession would not constitute withdrawal of Cooper's claim, but only an amendment of a part of it, and thus not implicate the formal requirements of 20 C.F.R. § 702.225(a). The Director also argues that the ALJ was empowered to disregard Cooper's amendment of his claim, and award benefits for the period in question, but not without giving Pool and Signal notice and allowing them to comment on the issue. Accordingly, the Director urges that we remand so that the ALJ may reconsider the concession of Cooper's counsel and allow Pool and Signal the opportunity to comment thereon.

Before we reach the issue of the dates for which Cooper allegedly withdrew a part of his demand for benefits, we must first consider whether he could even make such a concession at the hearing before the ALJ, rather than by following the formal requirements of 20 C.F.R. § 702.225(a). In our resolution of this issue, which we believe to be a matter of first impression for any court, we find the Director's argument well considered and persuasively reasoned, and thus choose to defer to it. We begin by noting that neither the LHWCA nor the agency regulations define what constitutes a "claim" under the LHWCA. See 33 U.S.C. §902; 20 C.F.R. § 701.301 (2001). A contextual reading of the LHWCA and the relevant regulations, however, strongly suggests that the term "claim" refers to the whole of the employee's demand for compensation, rather than to specific categories of benefits allowed under the LHWCA. By implication, only if an employee seeks to retract his claim in its entirety is he obliged to follow the requirements of 20 C.F.R. § 702.225(a); any lesser modification may be made less formally.

Section 13(a) of the LHWCA provides that "the right to compensation for disability or death under this Act shall be barred unless a claim therefore [sic] is filed." 33 U.S.C. § 913(a). Thus, a claim is an assertion of a "right to compensation for disability or death under this Act." The agency regulations similarly provide that "[c]laims for compensation for disability or death shall be in writing and filed with the district director." 20 C.F.R. § 702.221(a). A disabled employee may initiate a claim by filing an LS-203 with the district director. Nowhere on this form is the employee required to enumerate the specific category of disability (e.g., temporary total, permanent partial, etc.) or list the applicable dates for each disability. Nor is he required to file a separate LS-203 for each category or term of disability. Instead, the claim form merely requires

-16-

the employee to describe the injury and incident, suggesting that they, rather than the category of disability under the LHWCA, are the determinants of a claim.

Furthermore, the fluid nature of the categorization of disabilities militates against their treatment as discrete claims. A single injury can and usually does give rise to several different disabilities, since the LHWCA conceives of disabilities not merely in a medical sense, but an economic one as well. See 33 U.S.C. § 902(10) (defining "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment"). A claimant's disability may shift from one category to another upon a change in the condition of either his health or the relevant labor market. It is entirely conceivable that in the course of a hearing before an ALJ, a claimant may discover that at the time he filed his claim he did not correctly ascertain the timing of such shifts to the precise day. A static definition of "claim," as pertaining only to a precise category of disability for a fixed period of time, would deny the claimant the ability to modify his claim informally in response to such a situation. At least for the purposes of 20 C.F.R. § 702.225, we reject this definition of "claim" in favor of a more holistic concept, whereby employees remain free to modify the dates or categories of disability encompassed in their claim when they seek compensation for a single injury, arising out of a single incident, without being forced to jump over additional bureaucratic hurdles.

We are aware that in some cases, including this one, our interpretation of "claim" may run counter to public policy insofar as it makes it easier for an injured employee to waive his rights to disability benefits to which he might otherwise be entitled. However, we think that on balance a more flexible approach will redound to the benefit of claimants and better fulfill the statutory purpose of the LHWCA, either because they seek to modify their claims so as to recover greater

-17-

benefits, or simply because a speedier resolution of their claims will result in quicker payment of benefits. All parties, including claimants, have an interest in the expeditious resolution of claims for disability benefits.

In the instant case, Cooper's counsel apparently concluded that Cooper was not entitled to total temporary disability benefits for a brief period of less than five days, a small fraction of his total alleged period of disability. It defies common sense to suggest that the proper course at that point would be for the ALJ to suspend proceedings, for Cooper to draft a formal letter to the district director stating his intention to withdraw a claim to a fraction of the benefits that he sought, and for all parties to await the ruling of the district director. Besides wasting judicial resources, such a policy would delay the claimant's eventual recovery of compensation, and subvert the flexibility, informality, and efficiency that are the hallmark of the workers' compensation statutes. See U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 613 n.7 (1982) (observing that procedure in workmen's compensation law "is generally summary and informal" and that "[t]he whole idea is to get away from the cumbersome procedures and technicalities of pleading, and to reach a right decision by the shortest and quickest possible route") (quoting 3 A. Larson, The Law of Workmen's Compensation § 78.10, p. 15-2 (1976)); see also 33 U.S.C. § 923 ("In . . . conducting a hearing the deputy commission or [BRB] shall not be bound by . . . technical or formal rules of procedure, except as provided by this chapter; but may . . . conduct such hearing in such manner as to best ascertain the rights of the parties.").[8]

_____

[8] In dicta, the Supreme Court has observed that in proceedings under the LHWCA "'considerable liberality is usually shown in allowing amendment of pleadings to correct . . . defects,' unless the 'effect is one of undue surprise or prejudice to the opposing party.'" U.S. Indus./Fed. Sheet Metal, 455 U.S. at 613 n.7 (1982) (quoting 3 Larson, Law of Workmen's Compensation § 78.10, p. 15-11). Particularly in cases such as in this one, where the effect of the

-18-

Indeed, the very formality of the process prescribed in 20 C.F.R. § 702.225 strongly suggests that such procedures are limited to the withdrawal of an entire claim. For these reasons, we find that 20 C.F.R. § 702.225(a) applies only when an employee seeks to withdraw the entirety of his claim for benefits, rather than to modify it with respect to dates or categories of disability.[9]

Having concluded that the withdrawal provision of 20 C.F.R. § 702.225(a) did not prevent Cooper from amending his claim at the hearing, we must next consider whether and for what time period he did so. As noted, there is a discrepancy in the version of the dates for which Cooper allegedly withdrew his claim. The transcript of the formal hearing before the ALJ is unambiguous:

> [COOPER'S COUNSEL]: Since I did not have that letter [from Mr. Brooks to Mr. Wiedemann], I will withdraw any claim for TTD benefits during that period, up and to his conversation with Mr. Wiedemann.
> [ALJ]: Well, what period would that be now?
> [COOPER'S COUNSEL]: There would be just an additional five days, from February 28, not even to March 3, '94.
> [ALJ]: Oh, okay.

Transcript of ALJ Hearing (Dec. 5, 1997), at 56. At no stage of the proceedings, including in their brief to the BRB,[10] have the petitioners identified any basis beyond this exchange for their asseveration that Cooper withdrew his claim to benefits for the period from March 3, 1994 to September 2, 1994. Yet in their reply brief, the petitioners persist in characterizing their position

amendment is to reduce the liability of the employer and carrier, there is no danger of prejudice.

[9] The petitioners also argue in passing that Cooper never claimed benefits for any period prior to the filing of the LS-203, until the morning of the ALJ hearing. However, they offer no evidence to support their claim of ambush, aside from the comments of their own counsel at the hearing.

[10] The BRB did not address the discrepancy in dates in the brief portion of its opinion dedicated to this issue.

on this point as "uncontested."  See Petitioners' Reply Brief, at 7.  In fact, the Director expressly

challenged their version of the dates in his brief, and thus their claim is in no way "uncontested."[11]

See Director's Brief, at 25 n.9.  Oddly, however, Cooper conceded the accuracy of the

petitioners' version of the dates in his brief to the Court.  See Cooper's Brief, at 15-16.  We are

entitled, but not required, to treat this concession as a binding judicial admission of fact.  City

Nat'l Bank v. United States, 907 F.2d 536, 544 (5th Cir. 1990).  While we are loath to condone

careless advocacy, we are even less willing to reward the petitioners for making claims directly

contradicted by the record evidence.  Nor is Cooper's admission, made in passing in the one short

paragraph he devotes to this issue, on par with the "overwhelming, consistent totality of the[ ]

circumstances" in which we previously held a judicial admission binding.  See Stallard v. United

States, 12 F.3d 489, 496 (5th Cir. 1994).

While the ALJ was likewise free not to treat Cooper's concession as a binding judicial

admission, we agree with the Director that considerations of equity require that he should have so

stated and given the petitioners notice and opportunity to be heard.  We therefore remand so that

the ALJ may resolve whether Cooper effectively withdraw his claim to compensation for the

period of February 28, 1994 to March 3, 1994.

**D.     The BRB Erred By Reversing the ALJ's Award of Attorney's Fees Under Section 28(a) of the LHWCA and Awarding Them Instead Under Section 28(b)**

The LHWCA provides two avenues by which a successful claimant's attorney may

recover attorney's fees from the employer or carrier.  Under § 28(a), the ALJ shall award

---

[11] This is not the only instance in this case where the petitioners' counsel have misstated the facts or the law.  While the Court hesitates to impute any willfulness to such actions, excessive misrepresentations test the bounds of tolerable human error and call into question counsel's adherence to even a minimal practice standard.

-20-

attorney's fees "[i]f the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation . . . ," and the claimant prevails and is represented by legal counsel. 33 U.S.C. § 928(a). Alternatively, § 28(b) provides that the ALJ shall award attorney's fees under the following circumstances:

> If the employer or carrier pays or tenders payment of compensation without an award . . . , and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or [BRB] shall set the matter for an informal conference and following such conference . . . shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation . . . they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely on the difference between the amount awarded and the amount tendered or paid shall be awarded . . . .

33 U.S.C. § 928(b). In the instant case, the ALJ awarded attorney's fees under § 28(a). The BRB affirmed the award of attorney's fees on other grounds, finding that Pool's voluntary payment of disability benefits from November 24, 1992 through February 28, 1994 precluded liability under § 28(a), and instead holding Pool liable for such fees under § 28(b). Before this Court, the petitioners disclaim liability for attorney's fees under either subsection. Cooper conversely claims that Pool is liable under both sections. The Director argues that we need not decide whether an award of attorney's fees is proper under § 28(b), as the ALJ correctly awarded them under § 28(a).

It is clear that the BRB erred in awarding attorney's fees under § 28(b). Pool did pay compensation without an award; a controversy about the amount of additional compensation did

subsequently arise; and Cooper subsequently did obtain a compensation award in excess of what Pool was willing to pay. However, as the parties concur, no informal conference with the Department of Labor ever took place. Under the law of our Circuit, that fact poses an absolute bar to an award of attorney's fees under § 28(b). See FMC Corp. v. Perez, 128 F.3d 908, 910 (5th Cir. 1997); accord Staftex Staffing v. Director, OWCP, 237 F.3d 404, 409 (5th Cir. 2000), modified on rehearing, 237 F.3d 409 (5th Cir. 2000); James J. Flanagan Stevedores v. Director, OWCP, 219 F.3d 426, 434-35 (5th Cir. 2000). Cooper variously argues that Perez misconstrued the Ninth Circuit precedent on which it was based, that Staftex Staffing applied an unduly strict construction to § 928(b), that Flanagan Stevedores is factually distinct, and that, in any event, an informal conference would have served no purpose as Pool would not have complied with the recommendation. We see no need to entertain these arguments, not only because of our obligation to follow the established law of our Circuit, see Barber v. Johnson, 145 F.3d 234, 237 (5th Cir. 1998), but because we find that an award of attorney's fees is proper under § 28(a).

Although initially Pool voluntarily paid disability benefits to Cooper, it ceased making all such payments on April 25, 1994. Cooper filed his claim for additional benefits on February 25, 1995, and Pool received written notice thereof on March 15, 1995. Pool disclaimed further liability and declined to pay any further benefits within thirty days after receiving written notice of Cooper's claim, and is thus liable for attorney's fees under the plain language of the statute. See 33 U.S.C. § 928(a) (awarding attorney's fees where "the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation"). We find no basis in any statute, regulation, or case law for the

-22-

BRB's holding that Pool's prior voluntary payment of benefits precluded liability under § 28(a). Such payments preceded their receipt of written notice of Cooper's claim, and are thus irrelevant to the question of an award under § 28(a). We likewise attach no credence to Pool's argument that an award of fees under § 28(a) is improper because Cooper's claim was protective. As discussed supra, that assertion is incorrect as a matter of fact and of law.

Accordingly, we affirm the award of attorney's fees, but on different grounds than those cited by the BRB.

## III.    CONCLUSION

We affirm the decision of the BRB that Cooper's claim was not time-barred; affirm the award of attorney's fees on grounds other than those cited by the BRB; and reverse the decision of the BRB affirming the ALJ's award of temporary total disability benefits for the period from February 28, 1994 through March 3, 1994. We remand to the ALJ with instructions to resolve, after giving petitioners notice and opportunity to be heard, whether Cooper withdrew his claim for benefits for that same period.

AFFIRMED IN PART; REVERSED IN PART; and REMANDED.