**STANDARD DREDGING CORPORATION
v. HENDERSON, Deputy Commissioner,
et al.**

**JOHNSON et al. v. STANDARD DREDGING CORPORATION.**

**No. 11299.**

Circuit Court of Appeals, Fifth Circuit.

June 19, 1945.

Marian Mayer and R. Emmett Kerrigan, both of New Orleans, La., for appellant and cross-appellee Standard Dredging Corporation.

Thomas E. Twitty, of Mobile, Ala., and Garland Q. Whitfield, of Jackson, Miss., for appellees and cross-appellants Jack and Syrenthia Johnson.

Albert J. Tully, U. S. Atty., and Alvin H. McConnell, Asst. U. S. Atty., both of Mobile, Ala., for appellee.

Joseph H. Henderson, Deputy Commissioner.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The deputy commissioner awarded death benefits to the father and to the mother of Nathan Johnson amounting to $487.50 per year to each, without a limit of time stated. Standard Dredging Company sued in the district court to enjoin the award. From the decree denying an injunction and adjudging costs against the Company it appealed, and moved for a supersedeas, tendering bond. On this motion the court ordered, "Let the appeal be allowed to operate as a supersedeas upon the Standard Dredging Company filing bond in the sum of $5000 with sufficient sureties, to be conditioned as required by law". A bond was filed conditioned that appellant "shall prosecute said appeal to effect and answer all damages and costs if it fail to make said plea good". From this order of supersedeas the father and mother also took an appeal.

1. On the father and mother's appeal the error contended for is that section 21(b) of the Longshoremen's Act, 33 U.S.C.A. § 921(b), prohibits the stay of the amounts payable under an award pending final decision "unless upon application for an interlocutory injunction the court * * * allows a stay of such payments, in whole or in part, where irreparable damage would otherwise ensue to the employer. The order of the court allowing any such stay shall contain a specific finding * · * * that such irreparable damage would result to the employer, and specifying the nature of the damage." But the order appealed from is not a stay order either under the quoted

provision of the Act, or under Rule of Civil Procedure 62(c), 28 U.S.C.A. following section 723c, touching appeals from a judgment refusing an injunction. A supersedeas only was prayed, and that alone was granted. There was nothing to supersede except the judgment for costs. A supersedeas on appeal from a judgment denying an injunction does not operate as a pendente lite injunction. See Cumberland Tel. Co. v. Public Service Commission, 260 U.S. 212, 215, 43 S.Ct. 75, 67 L.Ed. 217. There was no error in granting a supersedeas under Rule of Civil Procedure 62(d), but it did not stay the enforcement of the award. The judgment on this appeal is affirmed.

■ 2. Touching the Company's appeal, it is contended the award is illegal on its face because requiring perpetual payments. It would be better in all cases for an award to. indicate when its requirements are to end. The Act however declares, "The total compensation payable under this chapter for injury or death shall in no event exceed the sum of $7,500." 33 U.S.C.A. § 914(m). An award requiring weekly payments without an expressed limit is not necessarily illegal, for the quoted provision of the Act fixes a stopping point for the payments. When $7,500 has been paid, payment is complete and the deputy commissioner can be so notified under Sect. 914(g). But as appears below, awards of death benefits to dependent parents have another limitation which we think must be taken note of and dealt with in the award, to-wit, that payments are to be due only "during dependency".

■ 3. The question most discussed by the deputy commissioner in his findings, and by the district judge, is whether the Longshoremen's Act is applicable to the employment of the deceased. The Company was at the time using the dredge Tampa to enlarge and deepen the channel of the Intracoastal Canal in Oyster Bay off the south coast of Alabama, in navigable waters. The dredged material was carried to the shore through a pipe line supported by pontoons, which there connected with other pipes through which it was distributed to make a fill later used by the county for approaches for à bridge to cross the canal. The operation was done under a single contract with the federal government. The deceased Johnson worked mostly on the shore managing the shore pipes, but he reached his place of work by being carried with others from the nearby town to the dredge and then walking along the pontoon line to his work place, returning the same way at the end of his work shift. While so returning he slipped from the pontoon line in deep water and was drowned. His injury and death occurred on navigable waters. His work though mostly on land was in direct connection with and assistance of the dredge which was engaged in improving a navigable waterway. The placing of the dirt on shore was only incidental to the main enterprise, which was maritime. We make no further effort to explain the limiting words touching the Act's coverage, "and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law", 33 U.S.C.A. § 903(a), but hold this case covered on the authority of Parker v. Motor Boat Sale Co., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; Radcliff Gravel Co. v. Henderson, 5 Cir., 138 F.2d 549; DeBardeleben Coal Corporation v. Henderson 5 Cir., 138 F.2d 481.

■ 4. Our greatest trouble is with the question of the dependency of the father and mother. The deputy commissioner did not discuss it in his findings, but found generally that they were dependent. The district judge said simply that he thought partial dependence was shown. The deputy commissioner's brief here merely says that there was testimony which if believed showed the deceased sent. money home to his parents and contributed to their support. But more than this is necessary to make a case of dependence. Regular contributions voluntarily made tend to show a need for them, but in this case Johnson was a minor of 18 years, hired out by his father, and his earnings above his necessary support belonged to his parents irrespective of their condition of health or finances. That he sent them money proves nothing as to their need.

■ The word "dependent" is used perhaps a score of times in the Act. It occurs in the definitions in Section 2(14), (15), (16), and (17), but is nowhere itself defined. It must be given its common meaning, "Not self sustaining", "Relying on for support". Webster's Int. Dictionary; 26 C.J.S., Dependent, p. 719. Many interpretations of the word in workmen's compensation laws are to be found cited in 71 C.J., Workmen's Compensation,

Sect. 272 and following. The summary of them there made is: "The test of dependency as laid down by the decided cases is reliance by the dependent on the employee's contributions for the means of living for himself or family, having regard to the dependent's class and position in life, and actual application of the contributions for that purpose". This is what the expressions amount to in the few federal cases touching on the point under the Longshoremen's Act. They all say, and that was the burden of the decisions, that a partial dependence is sufficient. Pocahontas Fuel Co. v. Monahan, 1 Cir., 41 F.2d 48; Texas Employers Ins. Ass'n v. Sheppeard, 5 Cir., 62 F.2d 122; Harris v. Hoage, 62 App.D.C. 275, 66 F.2d 801; London Guarantee & Acc. Co. v. Hoage, 64 App.D.C. 105, 75 F.2d 236; Wende v. Mc-Manigal, 2 Cir., 135 F.2d 151. But there must be a real need for help in living as well as actual contribution. London Acc. Co. v. Hoage, supra; Weeks v. Behrend, 77 U.S.App.D.C. 341, 135 F.2d 258. The death benefits under the Act are not life insurance to be paid to some one in every case, but arise only when the relationships and circumstances exist which are stated in the Act.

The evidence here discloses at the date of the death, June 4, 1943, a colored family living on a south Mississippi farm of 160 acres, forty or fifty acres being in cultivation. The father is 48 years old, the mother 45, both apparently in full health and vigor. Besides a son and two daughters who had married and moved off, the family consists of Lazarus, age 19 (who married and moved away soon after Nathan's death), Nathan, age 18, David, age 16, and two girls, age 14 and 12; all apparently normal and healthy. They have a good six room home and outhouses, three mules, a truck and a Ford automobile, a radio and a victrola. In 1938 the father bought this farm for $2,000, paying $200 cash and owing notes for the balance, about $60 falling due each six months which were paid as due. In the fall of 1942 new furniture was bought costing over $200, payable $20 each month which payments also were all met. In 1942 the father borrowed $1,100 to buy and raise 1,000 chickens, but they became diseased and nearly all died, causing a debt of $300 for the year to be carried over. He borrowed $500 to run his crop in 1943. But he usually made four bales of cotton, which with the seed would be worth over $600, and had

some $500 from bean and other vegetable crops. He had on the farm a church in which he preached, making about $50 per year. It was in the fall of 1942 that the father took Nathan to Gulfport and hired him out to work for wages, which Nathan from time to time sent home, after supporting himself. There is much conflict as to how much he sent, and especially whether a check of $61, (which was the amount due for the last week but one before Nathan's death) and $200 in cash were received before or after his death. The argument is that if after, they would not be a contribution but an inheritance. But we think it immaterial. Nathan was not making voluntary contributions, but his wages belonged to his parents, whether paid before or after his death, mother and father being equally entitled to them under Mississippi law. Code of Mississippi of 1942, Sec. 399. The weight of the testimony is that the several hundred dollars thus received was used almost wholly in paying the notes for the land and the furniture, the amounts used otherwise being negligible. We therefore, have the question whether the father and mother, being able to live comfortably according to their station in life, and relying on Nathan's earnings only to make a permanent investment in a farm and furniture, can be said to be dependent on him within the meaning of the Act. And if they were dependent at Nathan's death, which is the time when dependence is to be determined, the further question arises how long such a dependency will continue, for death benefits to dependent parents continue only "during such dependency". At the time of the award the furniture notes were all paid, and the balance due on the land was only $1,140. The back payments then awarded amounted to more than $1,200. We leave these questions undecided until the facts shall be more fully found.

In the death benefits section of the Act, dependency is twice made the condition of an award, and in both cases the payments end with the dependency. 33 U.S.C.A. § 909, Subsec. (b), authorizes an award to a "dependent husband * * * during dependent widowerhood." Subsection (d) authorizes as an award to a parent or grandparent of deceased "if dependent upon him at the time of the injury, 25 per centum of such wages during such dependency." Subsection (f) declares that all questions of dependency

shall be determined as of the time of the injury, but this refers to the dependency which generates the original right to an award. It does not annul the quoted provisions which cause payments to cease by cessation of dependency. The latter could not possibly be determined at the time of the injury. Cessation of dependency can probably be enquired into by resort to the procedure provided in Sect. 14(h) of the Act, 33 U.S.C.A. § 914(h), or Sect. 22 of the Act, 33 U.S.C.A. § 922. But we are of opinion that regularity requires that the award follow the statute in awarding compensation "during such dependency."

Because the record shows no findings as to why or how the parents were dependent, and whether or not the dependency found to exist at death continued beyond the time of the award, and because the award does not provide that payments are to be continued only during the dependency, we hold that the award ought to be set aside, but without prejudice to a further hearing and the making of such findings and such an award as may appear proper.

The judgment on the Company's appeal is accordingly reversed with direction to the District Court to enter a decree accordingly.