IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2008

Charles R. Fulbruge III
Clerk

No. 06-60842

HOLCIM (U.S.) INC.

Petitioner

v.

MARTHA REED; SHERRIE MCLAURIN; DIRECTOR, OFFICE OF
WORKER'S COMPENSATION PROGRAMS, U.S. DEPARTMENT OF
LABOR

Respondents

Petition for Review of an Order
of the Benefits Review Board

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Holcim (U.S.) Inc. ("Holcim") petitions for review of the final decision of the Benefits Review Board ("BRB") affirming an administrative law judge's ("ALJ") decision. The ALJ ordered Holcim to pay death benefits and attorney's fees to the mistress of its decedent employee because she qualified as a "dependent" under § 9(d) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 909(d). We vacate and remand.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Bernard Reed and Martha Reed, both Louisiana residents, were married on January 8, 1987, and lived together as husband and wife until December 1994. At that time, Mr. Reed left his wife and their shared domicile. After Mr. Reed moved out, Mrs. Reed filed for spousal support in 1995 and obtained a judgment in the Civil District Court for the Parish of Orleans against Mr. Reed awarding Mrs. Reed alimony. Later, in 2003, Mrs. Reed obtained a judgment against Mr. Reed for back support because he had failed to make $2,265 in alimony payments. Yet, Mr. and Mrs. Reed never divorced, and neither spouse ever instituted divorce proceedings. Beginning in 2001, Mr. Reed lived with another woman, Sherrie McLaurin, in a house belonging to McLaurin's sister. They were not married and there was no legal or familial relationship between them.

On September 12, 2003, Mr. Reed drowned while loading a barge on the Industrial Canal in the course of his employment with Holcim. The LHWCA provides for the payment of compensation when an employee is injured or killed while engaged in maritime employment on the navigable waters of the United States. 33 U.S.C. §§ 902, 903, 908, 909. Section 9 of the LHWCA, codified at 33 U.S.C. § 909, provides the statutory criteria for awarding compensation to survivors of an employee who dies from a work-related injury. A total of 66 2/3 percent of the deceased employee's average weekly wage may be paid to survivors. 33 U.S.C. §§ 909(b), (c). A widow, with no child of the deceased, is entitled to 50 percent of the total average weekly wage. 33 U.S.C. § 909(b). The remainder, 16 2/3 percent, may be awarded to "any [] persons who satisfy the definition of the term 'dependent' in section 152 of Title 26 [of the United States Code], but are not otherwise eligible under [§ 9 of the LHWCA]." 33 U.S.C. §

909(d).[1]  Title 26 United States Code § 152, part of the Internal Revenue Code, provides extensive criteria for determining whether a person may qualify as a taxpayer's dependent.  Under this provision, an adult who bears no legal or familial relationship to the taxpayer may be considered the taxpayer's dependent if she satisfies two requirements.  First, the taxpayer must provide over half of the individual's support during the taxable year.  26 U.S.C. § 152(a) (2003) (amended in 2004 and 2005).[2]  Second, the individual must have "as [her] principal place of abode the home of the taxpayer and [be] a member of the taxpayer's household."  26 U.S.C. § 152(a)(9).  "An individual is not a member of the taxpayer's household if at any time during the taxable year of the taxpayer, the relationship between such individual and the taxpayer is in violation of local law."  26 U.S.C. § 152(b)(5).

After Mr. Reed's death, both Mrs. Reed and McLaurin claimed to be Mr. Reed's "widow" and sought death benefits from his employer, Holcim, under the LHWCA.  Holcim requested an informal conference to determine who was entitled to benefits.  A claims examiner from the Department of Labor recommended that Holcim pay benefits to Mrs. Reed and not McLaurin. McLaurin then applied for a formal hearing, asserting that she was entitled to benefits either as Mr. Reed's widow or dependent.

At the hearing, McLaurin testified that, at the time of his death, Mr. Reed had been living with McLaurin for about two years.  McLaurin and Mr. Reed filed separate income tax returns and Mr. Reed never declared McLaurin as a

---

[1] This provision also specifically authorizes compensation to dependent grandchildren, brothers, sisters, parents and grandparents of the deceased worker.  No such individual has made a claim for compensation in this matter.

[2] We look to the 2003 version of the Internal Revenue Code because "[a]ll questions of dependency shall be determined as of the time of the injury," 33 U.S.C. § 909(f), meaning in this case Mr. Reed's death in September 2003.

dependent, but McLaurin testified that her earnings for the year 2002 totaled $1,772, whereas Mr. Reed's income was approximately $32,000. Mr. Reed apparently paid for all of their household expenses, including rent and utilities, and automobile purchase payments. McLaurin did not have a full-time job while she lived with Mr. Reed, and testified that she relied on his support.

On March 16, 2005, the ALJ awarded the widow's benefits (i.e., 50 percent of Mr. Reed's average weekly wage) to Mrs. Reed. The ALJ also determined that McLaurin qualified as Mr. Reed's dependent and awarded McLaurin the remaining 16 2/3 percent of Mr. Reed's average weekly wage. The ALJ also awarded both Mrs. Reed and McLaurin attorney's fees.[3] Holcim appealed only the ALJ's award of benefits and attorney's fees to McLaurin.[4] On July 19, 2006, the BRB affirmed the awards. Holcim then filed this petition. Respondent Director, Office of Worker's Compensation Programs ("OWCP"), filed a brief in support of McLaurin.

## II.

"This Court conducts a de novo review of the BRB's rulings of law, owing them no deference because the BRB is not a policymaking agency." Avondale Indus., Inc. v. Alario, 355 F.3d 848, 851 (5th Cir. 2003) (quoting Pool Co. v. Cooper, 274 F.3d 173, 177 (5th Cir. 2001)). But this court does afford Skidmore deference to the OWCP's interpretations of the LHWCA; under Skidmore, the amount of deference owed "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking

---

[3] The BRB subsequently reversed Mrs. Reed's attorney's fee award. That determination is not at issue in this appeal.

[4] Holcim never disputed that Mrs. Reed was entitled to the 50 percent as Mr. Reed's widow, and thus that award was not appealed to the BRB and is not at issue here.

power to control." Id. (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). With respect to issues of fact, "we examine 'whether the BRB properly concluded that the ALJ's factual findings were supported by substantial evidence on the record as a whole.'" Pool Co., 274 F.3d at 178 (quoting James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 429 (5th Cir. 2000)). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## III.

Holcim offers several arguments for why the BRB erred when it affirmed the ALJ's award of death benefits to McLaurin. Because we agree that McLaurin failed to establish that she continued to qualify as a dependent after Mr. Reed's death, which is a necessary condition for receipt of benefits under the LHWCA, we need not consider Holcim's alternative arguments.

As discussed above, the total amount payable to a deceased employee's survivors under the LHWCA is 66 2/3 percent of his average weekly wage. 33 U.S.C. §§ 909(b), (c). It is undisputed for purposes of Holcim's petition that Mrs. Reed, as the widow of the deceased employee, is entitled to receive 50 percent of Mr. Reed's average weekly wage. The underlying issue raised by Holcim's petition is whether McLaurin is entitled to receive the remaining 16 2/3 percent of Mr. Reed's average weekly wage. Section 9(d) of the LHWCA entitles "any [] persons who satisfy the definition of the term 'dependent' in section 152 of Title 26 of the United States Code" to receive that portion of the deceased employee's average weekly wage (i.e., 16 2/3 percent) "during such dependency."[5] Section

---

[5] Section 9(d) provides in full:

If there be no surviving wife or husband or child, or if the amount payable to

9(f) of the LHWCA provides that "dependency shall be determined as of the time of the injury." 33 U.S.C. § 909(f). In other words, based on the plain language of the statute, to receive death benefits as a dependent under the LHWCA, an individual must satisfy two conditions: (1) qualify as a dependent under 26 U.S.C. § 152 at the time of the employee's death; and (2) remain as a dependent after the employee's death. See also Standard Dredging Corp. v. Henderson, 150 F.2d 78, 81 (5th Cir. 1945) ("And if they were dependent at Nathan's death, which is the time when dependence is to be determined, the further question arises how long such a dependency will continue, for death benefits to dependent parents continue only 'during such dependency.'").

Here, in awarding death benefits to McLaurin, the ALJ found that McLaurin qualified as Mr. Reed's dependent at the time of his death. Likewise, in reviewing the ALJ's award, the BRB concluded that McLaurin qualified as Mr. Reed's dependent at the time of his death.[6] However, neither the ALJ nor

---

a surviving wife or husband and to children shall be less in the aggregate than 66 2/3 per centum of the average wages of the deceased; then for the support of grandchildren or brothers and sisters, if dependent upon the deceased at the time of the injury, and any other persons who satisfy the definition of the term "dependent" in section 152 of Title 26, but are not otherwise eligible under this section, 20 per centum of such wages for the support of each such person during such dependency and for the support of each parent, or grandparent, of the deceased if dependent upon him at the time of the injury, 25 per centum of such wages during such dependency. But in no case shall the aggregate amount payable under this subsection exceed the difference between 66 2/3 per centum of such wages and the amount payable as hereinbefore provided to widow or widower and for the support of surviving child or children.

33 U.S.C. § 909(d) (emphasis added).

[6] Holcim also challenges this aspect of the BRB's decision. More specifically, Holcim contends that McLaurin did not qualify as a dependent at the time of Mr. Reed's death because, under 26 U.S.C. § 152(b)(5), their adulterous relationship was "in violation of local law." Holcim also argues that the ALJ's finding that McLaurin qualified as Mr. Reed's dependent at the time of his death was not supported by sufficient evidence and that the ALJ

the BRB made any finding as to whether McLaurin continued to qualify as a dependent of Mr. Reed after his death. Rather, the written decisions of both the ALJ and the BRB are completely silent on this issue. Accordingly, the award must be vacated and the matter remanded for a determination whether the dependency found to exist at death has continued beyond that time.

Our decision is compelled by Henderson, which, though time-worn, has never been overruled, distinguished, or otherwise limited in any manner. In Henderson, this court, interpreting the same LHWCA provision at issue here, reversed an award of death benefits to a deceased employee's parents because the record failed to support the "necessary . . . case of dependence." Id. at 80. First, the court determined that it was unclear from the record whether the parents actually depended on the decedent at the time of his death. Id. at 81. Second, and more significantly for our case, the court found that the ALJ erred by failing to inquire into "how long [the parents'] dependency will continue, for death benefits to dependent parents continue only 'during such dependency'." Id. Citing earlier versions of both § 9(b) and § 9(d),[7] the court explained that "dependency is twice made the condition of an award, and in both cases the payments end with the dependency." Id. It went on to state:

> Subsection (f) declares that all questions of dependency shall be determined as of the time of the injury, but this refers to the dependency which generates the original right to an award. It does not annul the quoted provisions which cause payments to

---

erroneously concluded that McLaurin was a member of Mr. Reed's household at the time of his death. For the purposes of our limited ruling here, we need not resolve these issues, and instead assume, without deciding, that McLaurin in fact qualified as Mr. Reed's dependent at the time of his death.

[7] The then-applicable version of § 9(b) is materially different from the current version of that provision, but the version of § 9(d), for purposes of this petition, is not.

> cease by cessation of dependency. The latter could not possibly be determined at the time of the injury.

Id. at 81-82 (emphasis added). Thus, the court concluded that "regularity requires that the award follow the statute in awarding compensation 'during such dependency.'" Id. at 82. Because the record in Henderson included no findings as to "whether or not the dependency found to exist at death continued beyond the time of the award," the court held that "the award ought to be set aside, but without prejudice to a further hearing and the making of such findings and such an award as may appear proper." Id.

The OWCP concedes in its brief that § 9(d) has a prospective element, in that it entitles a dependent to continued compensation only "during such dependency." It also concedes that, under Henderson, "a claimant must remain dependent to continue receiving compensation." Moreover, the OWCP does not dispute that the ALJ made no findings regarding McLaurin's earnings after Mr. Reed's death or, more generally, whether McLaurin continued to remain dependent on Mr. Reed after his death. The OWCP nevertheless contends that Holcim's only recourse to challenge McLaurin's continued dependency on the death benefits is to file a petition to modify the ALJ's order under 33 U.S.C. § 922, which permits modification of compensation under the LHWCA based on "a change in conditions." Its argument is essentially that the ALJ was only required to conclude that McLaurin depended on Mr. Reed at the time of his death in order to properly award her benefits under § 9(d). While ordinarily, as discussed above, the OWCP's interpretation of the LHWCA is entitled to some level of deference under Skidmore, we need not accord any deference to a litigation position that is "wholly unsupported by regulations, rulings, or administrative practice." Total Marine Servs., Inc. v. Dir. OWCP, 87 F.3d 774, 777 n.2 (5th Cir. 1996) (quoting Smiley v. Citibank (S.D.), N.A., 517 U.S. 735,

741 (1996)) (internal quotation marks omitted). Here, the OWCP provides no such support for its construction of the statute; rather, it summarily concludes that, despite the prospective element of § 9(d), the proper method for contesting a death benefits award that featured no finding of continued dependency is through an ex post petition to modify under § 22 of the LHWCA. Tellingly, the OWCP does not even argue in its brief for Skidmore-level deference to its interpretation. In sum, we refuse to countenance the OWCP's wholly unsupported position on this issue, particularly when it is so clearly contradicted by this court's holding in Henderson.

Accordingly, we remand to the ALJ for factfinding and a determination in the first instance as to whether the award of benefits to McLaurin comports with § 9(d)'s plain requirement that a claimant collect benefits only "during such dependency."

VACATED and REMANDED.